*In re* BARBARA H., Alleged to be a Person in Need of Involuntary Admission and Involuntary Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Barbara H., Respondent-Appellant).

Second District    Nos. 2—96—0956, 2—96—0957 cons.

Opinion filed May 22, 1997.

Teresa L. Berge, of Guardianship & Advocacy Commission, of Rockford, and William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (John X. Breslin and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Sally A. Swiss, Assistant Attorney General, of counsel), for Department of Mental Health and Developmental Disabilities.

JUSTICE COLWELL delivered the opinion of the court:

This case is a consolidated appeal. The State filed two petitions concerning Barbara H. First, the State sought to admit Barbara H. to a mental health facility involuntarily pursuant to the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—100 *et seq.* (West 1994)). Second, the State sought to administer psychotropic medication to Barbara H. See 405 ILCS 5/2—107.1 (West 1994).

At a hearing at which the respondent was not present, the trial court granted the State's petition to involuntarily admit her to Elgin Mental Health Center (Center) for a period not to exceed 90 days. Further, the court found that the benefits of psychotropic medication outweighed any harm and allowed the Center to administer psychotropic medication to Barbara H. for a period not to exceed 90 days.

On appeal, the respondent argues that the trial court's orders granting her involuntary admission and authorizing the use of psychotropic medication must be reversed because she was not advised of the consequences of her failure to attend the hearing. Additionally, Barbara H. contends that the order authorizing psychotropic medication should be reversed because (1) the Code requires separate hearings for petitions for admission and petitions for medication; and (2) the State did not present sufficient evidence that she lacked the capacity to reasonably refuse the medication. We reverse and remand.

The record shows that, on August 2, 1996, the trial court held a joint hearing on the State's petition to involuntarily admit Barbara H. and the State's petition to involuntarily administer psychotropic medication to the respondent. At the beginning of the hearing, the trial court noted that the respondent was absent and asked the respondent's attorney, an assigned public defender, if he was waiving his client's presence. The public defender stated that an investigator and a student law clerk attempted to speak with Barbara H., but that Barbara H. refused to talk to them. The public defender added that Barbara H. stated that she was represented through the "Catholic Charities Association" and told the investigator and the student that she refused to come to court. The public defender then stated that if he was "in fact going to represent her today [he] would then waive her presence based upon that."

At that point, the trial court interrupted the public defender to ask again whether he was waiving his client's presence. The public

defender added that he believed that having Barbara H. in court "would be detrimental to her physical and emotional well-being." The trial court again requested the public defender to answer "[y]es or no" to whether he was waiving his client's presence. The public defender then stated that he waived Barbara H.'s presence.

Only one witness testified at the hearing. Dr. Farsana Husain testified that she is a staff psychiatrist at the Center. Dr. Husain stated that she was unable to perform a psychiatric examination of Barbara H. because on three occasions Barbara H. refused to talk to her. Accordingly, her diagnosis of the respondent was based on her review of the medical records, conversations with the staff, personal observations, and her past experience with the respondent when Barbara H. was her patient for a six-month period ending in May 1996.

Dr. Husain diagnosed Barbara H. with schizoaffective disorder, bipolar type. Dr. Husain explained that the respondent's disorder had two components to it: psychotic disturbance and mood disturbance. Overall, Dr. Husain said that Barbara H. "is not in touch with reality. She is delusional." Dr. Husain added that the respondent's mood ranged between being depressed, getting angry, and becoming agitated.

Dr. Husain testified that Barbara H. had been living "at placement" in association with Northwest Community Mental Health Center. Dr. Husain explained that Barbara H. was returned to the Center because she refused to take her medication, she believed people were poisoning her, and she falsely thought she was pregnant. Dr. Husain stated that upon returning to the Center Barbara H. was "very filthy and poorly dressed and groomed." Dr. Husain added that in a structured environment Barbara H. takes care of herself with some prompting, but independently she has not been able to care for herself.

Dr. Husain testified that Barbara H. has diabetes. Dr. Husain stated that the respondent voluntarily takes medication for her diabetes, but refuses to take medication for her mental illness.

Dr. Husain said that she did not believe that Barbara H. could manage her financial affairs if she were discharged because "historically" Barbara H. had been unable to manage her financial affairs on her own. Dr. Husain stated that she "had no knowledge" of whether Barbara H. would be able to find food for herself on her own if she were discharged. Overall, however, Dr. Husain acknowledged that she believed the respondent to be mentally ill and because of her illness she was unable to provide for her basic physical needs so as to guard herself from serious harm. Specifically, Dr. Husain noted that

Barbara H. still refused to take her medication and therefore in her opinion the respondent would not be able to function on "the outside."

Finally, Dr. Husain testified that Barbara H.'s ability to function had deteriorated. Dr. Husain stated that the respondent did not understand her illness and had "very poor insight" into her illness. Dr. Husain said that Barbara H. had been admitted 11 times since 1980 and that within the last four to five years her condition had been deteriorating.

Dr. Husain next testified to Barbara H.'s history with psychotropic medication. Dr. Husain stated that when taking psychotropic medication in the past the respondent had never experienced side effects. Dr. Husain added that when taking the medication Barbara H. became more sociable and her mood became stable. Further, while on the psychotropic medication, Barbara H. was able to care for herself and did not need prompting. Accordingly, Dr. Husain stated that in her opinion the benefits of psychotropic medication outweighed the harm.

Dr. Husain then added that she believed that due to her delusional state Barbara H. did not have the capacity to make a reasoned decision about the psychotropic medication. Dr. Husain explained that the respondent had "decompensated" and that her judgment and insight were "very poor." Dr. Husain acknowledged that Barbara H. understood that she had the right to refuse medication, but stated that she did not believe that Barbara H. understood the benefits of the medication. Additionally, Dr. Husain described the psychotropic medication that had stabilized Barbara H.'s condition in the past and stated that she would administer those same drugs to the respondent.

On cross-examination, Dr. Husain acknowledged that her diagnosis was not based on counseling sessions or interviews with Barbara H., but through her review of charts and her personal experience. Dr. Husain explained that Barbara H. had been involuntarily committed in the past but was discharged several times because the medication had stabilized her. Finally, Dr. Husain described that the last time she treated Barbara H. it took six months before Barbara H. stabilized because she refused to take her medication.

On appeal, Barbara H. argues that the trial court's orders granting her involuntary admittance to the Center and the administration of psychotropic medication should be reversed. Primarily, Barbara H. contends that the orders should be reversed because section 3—806 of the Code, which governs the waiver of a respondent's presence at a hearing, is unconstitutional because it allows a hearing to proceed in

a respondent's absence without the respondent having been told that the hearing may proceed without him or her. See 405 ILCS 5/3—806 (West 1994).

We note also that Barbara H. alleges that the court's authorization of psychotropic medicine was erroneous because the State failed to prove by clear and convincing evidence all the factors listed in the Code regarding administering psychotropic medicine against a respondent's will. See 405 ILCS 5/2—107.1 (West 1994). Further, Barbara H. contends that the order authorizing psychotropic medication should be reversed because the Code mandates that hearings for admittance and hearings for medication be held separately, and in this case the trial court held one combined hearing.

■ As the constitutionality of section 3—806 of the Code affects both issues on appeal, we will address that issue first. Courts presume statutes are constitutional and will construe them so as to uphold them when it is reasonably possible to do so. *Wilson v. Department of Revenue*, 169 Ill. 2d 306, 310 (1996). A statute is facially unconstitutional only if " 'no set of circumstances exists under which the Act would be valid.' " *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987).

■ When deciding whether a statutory procedure affords procedural due process, courts must take three factors into account: the private interest that will be affected by the action; the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976). Overall, to survive a facial challenge, the procedures a statute provides must at least be adequate to authorize the liberty deprivation with respect to some of the persons subject to it. See *United States v. Salerno*, 481 U.S. 739, 95 L. Ed. 2d. 697, 107 S. Ct. 2095 (1987). Finally, the standard of review for determining whether constitutional rights have been violated is *de novo*. *People v. Anaya*, 279 Ill. App. 3d 940 (1996).

■ At issue in this case is section 3—806 of the Code, which outlines the procedures regarding a respondent's presence at a hearing. Section 3—806 states:

"(a) The respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's atten-

dance would subject him to substantial risk of serious physical or emotional harm.

(b) The court shall make reasonable accommodation of any request by the recipient's attorney concerning the location of the hearing. If the recipient's attorney advises the court that the recipient refuses to attend, the hearing may proceed in his or her absence.

(c) No inference may be drawn from the recipient's non-attendance pursuant to either subsection (a) or (b) of this Section." 405 ILCS 5/3—806 (West Supp. 1995).

When approving the defense attorney's waiver of Barbara H.'s presence at the hearing, the trial court did not state under which subsection of section 3—806 it allowed the waiver. Barbara H. argues, however, that both subsection (a) and subsection (b) are unconstitutional, so regardless of the section the trial court applied, the orders granting the State's petitions must be reversed. We will discuss the constitutionality of section 3—806(a) first.

Barbara H. contends that section 3—806(a) is unconstitutional because it requires only that a respondent's attorney waive a respondent's right to be present at a hearing. Barbara H. argues that, because being present at a civil commitment hearing is a fundamental constitutional right, she is the only one who could waive her right to be present. Such a waiver is only possible, Barbara H. contends, after she is made aware of her right to be present at the hearing and knows the consequences of a waiver—namely, that the hearing may proceed without her. We agree.

■ It is undisputed that a significant due process liberty interest exists to be free from unjustified civil commitment and to refuse unwanted, nonemergency psychotropic medication. See *Ingraham v. Wright*, 430 U.S. 651, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977); *In re Branning*, 285 Ill. App. 3d 405 (1996). Indeed, respondents in civil commitment hearings have a constitutional right to attend their hearings. *Vitek v. Jones*, 445 U.S. 480, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980). Respondents, however, may waive their constitutional rights. *People v. Johnson*, 75 Ill. 2d 180, 187 (1979). To be valid, waivers of constitutional rights " 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " *Johnson*, 75 Ill. 2d at 187, quoting *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469 (1970). Therefore, a respondent has a constitutional right to be present at a civil commitment hearing unless he voluntarily, intelligently, and knowingly waives it. See *Kendall v. True*, 391 F. Supp. 413, 419 (W.D. Ky. 1975) (discussing a Ken-

tucky statute). Of course, a respondent who has not waived his presence may lose his right to be present if his conduct is so disruptive as to require his exclusion. See *Illinois v. Allen*, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970); *Kendall*, 391 F. Supp. at 419.

In the present case, both parties acknowledge that the due process clause of the fourteenth amendment applies to involuntary commitment proceedings. Barbara H. argues that section 3—806(a) violates procedural due process because it allows her attorney to waive one of her constitutional rights. The State, however, contends that there are procedural safeguards in section 3—806(a) that adequately protect Barbara H.'s due process interests. Accordingly, the controversy in this case centers around the minimal constitutional standards required to protect a respondent's liberty interest.

■ Under section 3—806(a), a civil commitment hearing may occur without a respondent, even if that respondent wishes to attend the hearing. If the trial court is satisfied by a clear showing that the respondent's presence would subject him to substantial risk of serious harm, the trial court may accept a waiver by the respondent's attorney. We find that this procedure fails adequately to protect a respondent's liberty interest. Particularly, we find that the statute's procedures unconstitutionally allow a hearing to take place without the respondent even when a respondent has not waived his presence at that hearing.

A recent decision concerning the constitutionality of another section of the Code provides some guidance to our analysis. In *In re Branning*, 285 Ill. App. 3d 405 (1996), the Appellate Court, Fourth District, determined that section 2—110 of the Code violated procedural due process. Section 2—110 of the Code concerns when a facility may treat a respondent with electro-convulsive therapy (ECT). Under section 2—110, a respondent's guardian may give consent to such treatment if the guardian deems it "to be in the best interests of the ward." See 405 ILCS 5/2—110 (West 1994).

The *Branning* court determined that this procedure violated due process because it did not provide sufficient protections to a respondent. The court explained that the statute did not specify, among other things, the level of evidence by which anything must be proved, exactly *what* needed to be proved, input from a healthcare professional, or proof that the respondent was unable to make a rational choice for himself. Instead, the statute's only requirement for the administration of ECT was that the guardian consented and that the *guardian* believed that the ECT was in the ward's best interest. See *Branning*, 285 Ill. App. 3d at 413.

The most significant omission in section 2—110 is also in section

3—806(a). Indeed, section 3—806(a) does not require that the court make a finding that the respondent is unable to make a rational choice before allowing his counsel to waive his attendance at the hearing. Further, section 3—806(a) does not require input from a healthcare professional that the respondent is unable to make a rational choice concerning his presence at the hearing, or even that the respondent's presence will cause harm. Instead, section 3—806(a) requires only that the respondent's attorney show that the respondent's presence would cause harm. We find that such a procedure is not adequate to protect the liberty interests of the respondent.

Several federal court decisions involving similar statutes in other states support our conclusion that section 3—806(a) is unconstitutional. First, in *Doremus v. Farrell*, 407 F. Supp. 509 (D. Neb. 1975), the court was presented with a Nebraska statute that outlined the procedures for a subject's presence at his commitment hearing. The statute stated that if the County Board of Mental Health " 'decide[s] that the presence of the proposed patient is unnecessary or would probably be injurious to him, the board members shall not require the proposed patient to be present at the hearing on the application.' " *Doremus*, 407 F. Supp. at 515, quoting Neb. Rev. Stat. § 83—325 (1971). The federal court held that this procedure was unconstitutional. The court explained that the subject had a "constitutional right to be present at the hearing unless he voluntarily, intelligently and knowingly waives it or his counsel waives it for him after a showing that he is incompetent, or the subject's conduct is so disruptive as to require his exclusion." *Doremus*, 407 F. Supp. at 515. Accordingly, as the Nebraska statute had allowed a hearing regarding the subject to proceed without the subject and without the subject's waiver, it was deemed unconstitutional. See *Doremus*, 407 F. Supp. at 515-16.

Similarly, in *Suzuki v. Quisenberry*, 411 F. Supp. 1113, 1129 (D. Haw. 1976), the court stated that "[d]ue process requires the presence of the person proposed to be committed at all judicial proceedings conducted for that purpose." The *Suzuki* court explained that waiver was possible, but would only be valid "upon acceptance by the court following a judicial determination that the person understands his rights and is competent to waive them or that the person is so mentally or physically ill as to be incapable of attending the proceedings." *Suzuki*, 411 F. Supp. at 1129.

Moreover, in *Bell v. Wayne County General Hospital*, 384 F. Supp. 1085 (E.D. Mich. 1974), the court found a Michigan commitment statute unconstitutional. The statute provided that an individual had a right to be present at a commitment hearing unless the court, either

by certificate of the medical superintendent in charge of the hospital admitting the patient or by certificate of two other physicians, deemed that the individual's presence would be "improper and unsafe." *Bell*, 384 F. Supp. at 1094. The *Bell* court explained that the Michigan statute was unconstitutional. The court first stated that the due process right of a respondent to be present at a commitment hearing was at least as broad as the right of a criminal defendant to be present at trial. The *Bell* court explained:

> "Under *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) a criminal defendant may be removed from trial where his conduct is so disruptive that the proceeding cannot continue in any reasonable manner. In our view a respondent may be removed from commitment proceedings under similar circumstances, but to exclude the respondent as provided above violates due process. \*\*\* While a committing court may exclude a respondent where his presence makes it impossible to reasonably conduct the hearing, it may not decide in advance of hearing and based solely on the certificate of physicians, that he shall not be allowed to appear. Where his removal to the courthouse would be 'improper and unsafe,' some method alternative to total exclusion must be attempted first \*\*\*." *Bell*, 384 F. Supp. at 1094.

Similarly, in *Kendall v. True*, 391 F. Supp. 413, 419 (W.D. Ky. 1975), the court explained that a Kentucky statute that provided that the court psychiatrist determine whether a patient be present at his commitment hearing was "woefully deficient" in procedural due process aspects. The court explained that the "minimum requirements of due process" require the right of the patient to be present at the hearing, "unless the right is intelligently waived by himself and counsel, or unless the Court makes a specific finding after the patient has been brought to the place of [the] hearing that he should be removed from the hearing because his conduct is so disruptive that the proceeding cannot continue in any reasonable manner." *Kendall*, 391 F. Supp. at 419.

Finally, the United States Supreme Court has stated that to afford sufficient protection to a liberty interest to a prisoner being transferred to a mental hospital, the prisoner must receive notice of the commitment hearing and have an opportunity to be present at the hearing. See *Vitek*, 445 U.S. at 494, 63 L. Ed. 2d at 565-66, 100 S. Ct. at 1264. In discussing that the prisoner in *Vitek* had a right to attend the hearing and present evidence, the Supreme Court explained that the State's interest in avoiding disruption was recognized by limiting, in appropriate circumstances, the prisoner's right to call, confront, and cross-examine witnesses. *Vitek*, 445 U.S. at 496, 63 L.

Ed. 2d at 567, 100 S. Ct. at 1265. Accordingly, although the Supreme Court never specifically addressed the issue of waiver, it did state that a prisoner's constitutional right to be present at a civil commitment hearing could be curbed if the court deemed his conduct too disruptive. See *Vitek*, 445 U.S. at 496, 63 L. Ed. 2d at 567, 100 S. Ct. at 1265.

We find the *Doremus, Kendall, Suzuki*, and *Bell* courts' interpretation of the federal constitution and the minimum protections required to protect an individual's liberty interest compelling. Further, we find that the only limitation placed on an individual's constitutional right to attend his civil commitment hearing thus far is the state's interest that the individual may disrupt court proceedings. See *Vitek*, 445 U.S. at 495-97, 63 L. Ed. 2d at 566-67, 100 S. Ct. at 1265-66. As a result, we find that, because section 3—806(a) provides for a civil commitment hearing to take place without the respondent's waiver and for reasons other than the respondent's behavior being so disruptive that it interferes with the court proceedings, it violates the respondent's due process rights, thereby being unconstitutional.

The State argues that this court should rely on *French v. Blackburn*, 428 F. Supp. 1351 (M.D.N.C. 1977), aff'd, 443 U.S. 901, 61 L. Ed. 2d 869, 99 S. Ct. 3091 (1979), which held constitutional a North Carolina statute that allowed an individual's presence at a hearing to be waived by the submission of a written statement by his counsel that was approved by the court. We decline to compare the North Carolina statute to section 3—806(a) or comment on its constitutionality. Section 3—806(a) does not require a written statement by an attorney. Further, we find the discussion of the minimum due process procedures required in civil commitment hearings in *Doremus, Kendall, Suzuki*, and *Bell* more helpful to our analysis in this case.

Additionally, the State argues that to require a mental health patient to waive his right to be present at a hearing would be "unrealistic" and "may well prove impossible" because most mental health patients do not have the capability to make a waiver. Further, the Attorney General contends that requiring admonishments to the respondent would not "have any value" in safeguarding a respondent's liberty interest and would actually impede the State's *parens patriae* interest.

We find these arguments unpersuasive. Both the State and the Attorney General fail to recognize that respondents attending a civil commitment hearing are presumed competent. *People ex rel. Drury. v. Catholic Home Bureau*, 34 Ill. 2d 84, 95 (1966). Accordingly, it cannot be assumed that Barbara H., or any other respondent in her position,

is incapable of waiving her right to be present at her hearing. Similarly, a state's *parens patriae* interest in an individual does not exist *until* that individual has been declared incompetent. *In re Orr*, 176 Ill. App. 3d 498, 510 (1988). Therefore, requiring the respondent's attorney, guardian *ad litem*, or the court to inform her of her right to attend her hearing cannot impede a state's *parens patriae* interest because at that time the respondent is not incompetent.

The State and the Attorney General also contend that a waiver from a respondent cannot be mandated because under such a procedure the respondent's attorney would be required to explain to the court whether the respondent understood her right to be at the hearing. The State and the Attorney General argue that these explanations of whether a respondent understood her right to be present at a hearing may be detrimental to the respondent's defense. We find this argument also unpersuasive. Certainly, an individual's ability to understand court procedure and a fundamental right sufficiently to make a rational choice to attend a hearing is quite different from that same individual's overall mental capabilities and whether that individual is mentally incompetent. Further, under section 3—806(c) of the Code, *no* inference may be drawn from a respondent's failure to attend his hearing. Accordingly, any possible damage that results from an attorney's explaining his client's waiver or lack of waiver is negated by this provision.

Finally, the Attorney General and the State remind this court in their briefs that the involuntary medication statute and the involuntary commitment statute contain a 90-day period time limitation and a 180-day period limitation. The Attorney General claims that these time limits mean that only a "limited term of infringement on the liberty interest at stake" results from these civil commitment proceedings. Further, the State adds that, because the Code requires periodic review of every case, an individual civilly committed is in a much different position than the position of a criminal defendant who is deprived of his liberty "for whatever term of imprisonment the judge imposes." We disagree.

By making such arguments, the State and the Attorney General fail to acknowledge that the United States Supreme Court has recognized that "for the ordinary citizen, commitment to a mental hospital produces 'a massive curtailment of liberty.' " *Vitek*, 445 U.S. at 491, 63 L. Ed. 2d at 564, 100 S. Ct. at 1263, quoting *Humphrey v. Cady*, 405 U.S. 504, 509, 31 L. Ed. 2d 394, 402, 92 S. Ct. 1048, 1052 (1972). Indeed, commitment to a mental hospital "can engender adverse social consequences to the individual" and "can have a very significant impact on the individual." *Addington v. Texas*, 441 U.S.

418, 425-26, 60 L. Ed. 2d 323, 331, 99 S. Ct. 1804, 1809 (1979). Accordingly, that the Code imposes a time limitation on the period of commitment and the period in which psychotropic medication may be administered does not change the fact that the commitment results in a loss of freedom that affects an individual's liberty interest. Therefore, it remains necessary for the State to comply with the minimum requirements of due process. See *Vitek*, 445 U.S. at 491, 63 L. Ed. 2d at 563, 100 S. Ct. at 1263.

This court wishes to note that it is not beyond our recognition that requiring a respondent's waiver for the court to proceed *in absentia* against a respondent raises several practical concerns for our trial courts. However, we are encouraged by laws in other states that have already addressed this issue. We believe that these laws provide examples of civil commitment hearing procedures that, if adopted by our legislature and followed by our court system, protect a respondent's liberty interest without throwing the trial courts into a state of disarray.

We note that several state laws simply provide that an individual has a right to be present at the civil commitment hearing unless he waives that right or the court proceeding cannot reasonably continue while the person is present. See, *e.g.*, Minn. Stat. Ann. § 253B.08 (West 1994); N.J. Stat. Ann. § 30:4—27.14 (West 1996); N.M. Stat. Ann. § 43—1—11 (Michie 1996). Accordingly, the State's and the Attorney General's concern that a hearing may be stopped "from going forward" because a respondent refuses to waive her right but disrupts the proceedings is unfounded. Instead, a statute that recognizes that attendance at a commitment hearing is a constitutional right that is only waivable by the respondent, except in circumstances where the respondent's behavior disrupts the court proceedings so that the hearing cannot continue in a reasonable manner, adequately protects the respondent's liberty interest *and* the state's interest in having a hearing.

As currently drafted, section 3—806(a) affords no such protection. Instead, under section 3—806(a), an individual's presence may be waived, even if that individual wishes to attend the hearing. This outcome is undoubtedly unconstitutional as it flies in the face of the clearly enunciated fundamental right that an individual has to be present at his civil commitment hearing. See *Specht v. Patterson*, 386 U.S. 605, 610, 18 L. Ed. 2d 326, 330, 87 S. Ct. 1209, 1212 (1967).

Turning to the second part of section 3—806, this court finds that section 3—806(b) is also unconstitutional on its face for the reasons discussed above. Specifically, we note that section 3—806(b), while allowing an individual to "refuse[ ] to attend" the hearing, does not

provide that this refusal be made knowingly or intelligently by the individual after that individual is aware of his or her constitutional right to be present at the hearing and that the hearing may proceed in that individual's absence. See *Johnson*, 75 Ill. 2d at 187 (discussing when a "waiver" is valid). Accordingly, like section 3—806(a), following the procedure in section 3—806(b) can result in a hearing taking place without an individual when that individual has not waived his right to be present at that proceeding. Therefore, because section 3—806(b) fails adequately to protect an individual's liberty interest, we find it unconstitutional.

In conclusion, we find that section 3—806(a) and section 3—806(b) are unconstitutional on their face as they fail adequately to protect an individual's liberty interest. Accordingly, Barbara H. is entitled to a new hearing on whether she can be involuntarily committed to the Center as well as a new hearing on whether the Center can administer psychotropic medication. Therefore, because new hearings will take place, we decline to address whether the trial court's holding one combined hearing on both State petitions in violation of the statute mandates a new hearing, or whether the court's order authorizing psychotropic medicine was not supported by the evidence.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded.

Reversed and remanded.

McLAREN and BOWMAN, JJ., concur.