*In re* BRUCE PERONA, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Bruce Perona, Respondent-Appellant).

Fourth District   No. 4—97—0261

Argued October 15, 1997.—Opinion filed February 9, 1998.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, and Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, for appellant.

Kevin Lyons, State's Attorney, of Peoria (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

In March 1997, respondent Bruce Perona was involuntarily recommitted to Zeller Mental Health Center (Zeller) after a hearing *in absentia* conducted pursuant to section 3—806 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—806 (West 1996)). He appeals, arguing (1) the State failed to comply with section 3—806 of the Code; (2) the section is unconstitutional because it violates his right to due process under the United States and Illinois Constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2); and (3) the circuit court erred by entering a subsequent order pursuant to section 2—107.1 of the Code (405 ILCS 5/2—107.1 (West 1996)), subjecting him to psychotropic medication against his will. We affirm.

## I. BACKGROUND

By way of background, on November 9, 1996, Perona was found naked in his car by police. The police believed he was hallucinating

and in need of psychiatric care. They took him to Zeller, where he was admitted. On November 13, 1996, the trial court granted the State's motion to have Perona involuntarily committed for 90 days. On December 18, 1996, the trial court granted the State's petition to administer psychotropic medication involuntarily. On February 11, 1997, the State brought a petition for involuntary recommitment. Before the hearing began, Perona's attorney noted Perona did not want to come and waived Perona's presence on his behalf. The hearing continued in Perona's absence. The court granted the petition, and Perona was recommitted for another 30 days.

On March 7, 1997, the State filed the instant motion for involuntary admission and recommitment. Perona was given notice of the motion, and counsel was appointed before the petition was heard on March 12, 1997. He was also given notice of the instant motion to allow the State to administer psychotropic drugs to him against his will. At the beginning of the hearing, Perona's counsel made the following statement:

"I would like to indicate for the record that I visited with [Perona] yesterday. He indicated that he would not want to attend the hearing. I believe he did that last time also. I spoke to him about the idea of consolidating the two petitions, but we didn't get that far. He said he didn't want to come to court. I ask we proceed just on the one."

The involuntary recommitment hearing proceeded without Perona present. According to Dr. Jayalakshmi Attaluri, a psychiatrist at Zeller, Perona suffers from psychosis, coupled with paranoia and auditory hallucinations. Perona believed people at Zeller were provoking him by coughing or crossing their legs, thereby communicating to him that he had to take off his clothes. After hearing testimony from Attaluri, the trial court entered an involuntary recommitment order.

On March 19, 1997, the State's petition for involuntary medication was heard. Perona was present and, as the hearing began, he started unbuttoning his shirt. Attaluri told him he must not do that, and the judge told him that if he wanted to attend the hearing, he would have to remain clothed. Perona stated "I don't want to attend it" and left the courtroom. The hearing proceeded without Perona present.

According to Attaluri, Perona's illness resulted in a deterioration of his ability to function. She testified Perona refused to talk to her; his delusions continued, as did accompanying auditory hallucinations. Attaluri testified Perona denied he has a psychiatric illness and lacked the ability to make a reasoned decision for himself as to whether it was in his best interest to take medication.

According to the doctor, Perona started demonstrating signs of depression in addition to his psychoses. Attaluri testified an aide at Zeller recently found Perona lying naked in his room, hoping someone would come and "do something and then everything would be back to normal like *** he was four years ago." Frequently in the past month, Perona has refused to eat. For two weeks prior to the hearing, he had been eating at least a meal a day, but he was still losing a lot of weight. Perona had been on an antidepressant earlier, but Attaluri discontinued it once Perona stopped eating regularly because the drug caused hypotension.

Attaluri testified Perona showed improvement in January, when he was on Olanzapine, a neuroleptic drug that was crushed into his food, but his condition worsened when she started giving him the drug in pills. Attaluri suspected he stopped taking it. Attaluri testified Perona's condition fluctuated, but this was accounted for by his fluctuating compliance with the medication regimen. Attaluri testified Perona had been taking medication for 10 days prior to the hearing. He showed no signs of improvement, but Attaluri testified this was because of the delay before the medication takes effect. The morning of the hearing the prior medication order expired and Perona refused to take his medication.

Attaluri testified the benefits of psychotropic medication would outweigh the side effects. She had attempted to treat Perona using outpatient therapy and both individual and group counseling. However, she found medication was necessary for Perona to improve. Attaluri testified she would be able to monitor for possible harm or side effects at the hospital.

Perona's attorney rested without presenting evidence. The judge stated that the evidence was clear and convincing, there was a need for administration of psychotropic medicine, and the order would not exceed 90 days. Perona appeals both the March 12 and the March 19 orders.

## II. ANALYSIS

### A. The Recommitment Order

#### 1. *Compliance With Section 3—806*

■ On appeal, Perona first argues the trial court failed to comply with section 3—806 because it did not find his attendance would subject him to a substantial risk of serious physical or emotional harm. Section 3—806 provides, in pertinent part:

"(a) The respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present *and the*

*court is satisfied by a clear showing that the respondent's atten-
dance would subject him to substantial risk of serious physical or
emotional harm.*

(b) *** If the recipient's attorney advises the court that the re-
cipient refuses to attend, the hearing may proceed in his or her
absence.

(c) No inference may be drawn from the recipient's non-
attendance pursuant to either subsection (a) or (b) of this Sec-
tion." (Emphasis added.) 405 ILCS 5/3—806 (West 1996).

It is undisputed that the trial court did not make a finding of
substantial risk of harm, as required by section 3—806(a). However,
this finding is not required by the text of section 3—806(b). The com-
ments of Perona's counsel at the March 12 hearing indicate this case
falls squarely within this provision. Section 3—806(c) demonstrates
these two provisions provide distinct methods for a proceeding to
continue in a respondent's absence. Section 3—806(a) demonstrates
the legislature knew how to impose a requirement of a finding of
substantial harm and chose not to in cases where the respondent re-
fuses to attend. See *Village of Southern View v. County of Sangamon,*
228 Ill. App. 3d 468, 473, 592 N.E.2d 639, 642 (1992) (where a partic-
ular provision appears in a statute, the failure to include that same
requirement in another section of the statute will not be deemed to
have been inadvertent).

## 2. *Constitutional Challenge to Section 3—806*

■ Citing this court's recent opinion in *In re Branning,* 285 Ill.
App. 3d 405, 674 N.E.2d 463 (1996), Perona next argues section
3—806 of the Code violates both his procedural and substantive due
process rights by allowing a hearing to continue in his absence
without adequate assurances his waiver of the right to be present is
voluntary. While procedural due process governs the methods by
which a protected interest may be deprived, substantive due process
imposes absolute limits on the state's ability to act without regard to
any procedural protections in place. *Collins v. City of Harker Heights,*
503 U.S. 115, 125, 117 L. Ed. 2d 261, 273, 112 S. Ct. 1061, 1068
(1992); *Dennis E. v. O'Malley,* 256 Ill. App. 3d 334, 349, 628 N.E.2d
362, 373 (1993).

We address only Perona's procedural due process claim. Where a
due process claim framed by a party in terms of substantive due pro-
cess is better resolved under procedural due process standards, it is
within the authority of a court of review to restructure its analysis
accordingly. See *Gasick v. O'Connor,* 201 Ill. App. 3d 1013, 1017, 559
N.E.2d 574, 577 (1990). *Branning* dealt with the constitutionality of
a part of the Code that allowed a caregiver to give consent for a re-

spondent to be subjected to electroconvulsive therapy. While our decision in *Branning* relied in part on substantive due process, that case implicated the fundamental substantive right to refuse psychotropic treatment. *Branning*, 285 Ill. App. 3d at 411-12, 674 N.E.2d at 468, citing *In re C.E.*, 161 Ill. 2d 200, 214, 641 N.E.2d 345, 351 (1994). Here, by contrast, Perona seeks additional procedural protections for waiver of his procedural right to be present. While the procedural right to be present may relate to the substantive right to be free from unwanted treatment, Perona has presented no precedent or argument as to this relationship. To the extent Perona's claim arises under substantive due process, Perona has waived the issue by failing to brief it adequately. 155 Ill. 2d R. 341(e)(7).

Perona's procedural due process argument does not clearly indicate whether his constitutional attack on section 3—806 is a facial attack or an attack on the statute as applied to him. However, the record does not demonstrate, and Perona does not allege, that his waiver of the right to attend was, in fact, involuntary. Consequently, we assume Perona's constitutional attack is a facial one. To survive a facial challenge, the procedures a statute provides must at least be adequate to authorize the liberty deprivation with respect to some of the persons subject to it. *United States v. Salerno*, 481 U.S. 739, 751, 95 L. Ed. 2d 697, 711, 107 S. Ct. 2095, 2103 (1987); *Branning*, 285 Ill. App. 3d at 412-13, 674 N.E.2d at 469. The second district recently declared both sections 3—806(a) and (b) facially unconstitutional on procedural due process grounds. See *In re Barbara H.*, 288 Ill. App. 3d 360, 370-71, 680 N.E.2d 471, 478 (1997).

*Barbara H.* declared section 3—806(a) unconstitutional only after an extensive analysis of pertinent federal precedent. See *Barbara H.*, 288 Ill. App. 3d at 368-70, 680 N.E.2d at 476-78, discussing *Doremus v. Farrell*, 407 F. Supp. 509 (D. Neb. 1975), *Suzuki v. Quisenberry*, 411 F. Supp. 1113, 1129 (D. Haw. 1976), *Bell v. Wayne County General Hospital*, 384 F. Supp. 1085 (E.D. Mich. 1974), and *Kendall v. True*, 391 F. Supp. 413 (W.D. Ky. 1975). Under this line of cases, due process requires a patient to be present at a civil commitment hearing unless the right is intelligently waived by himself and counsel (*Doremus*, 407 F. Supp. at 515), and may not be waived by a third party acting in what he perceives to be the best interest of the recipient (see *Bell*, 384 F. Supp. at 1094). The *Barbara H.* court also relied on the similar holding in *Branning* (285 Ill. App. 3d 405, 674 N.E.2d 463).

However, the *Barbara H.* court's analysis of section 3—806(b) was less detailed. The court simply incorporated its constitutional analysis of section 3—806(a) and concluded subsection (b) unconstitu-

tionally allowed a commitment hearing to proceed after a recipient refused to attend, with no showing the refusal was knowing or intelligent. *Barbara H.*, 288 Ill. App. 3d at 372-73, 680 N.E.2d at 479-80. For the reasons stated below, we disagree with the portion of *Barbara H.* that invalidates section 3—806(b). Unlike section 3—806(a) and the statutory provision at issue in *Branning*, subsection (b) does not authorize a third party to make decisions for the respondent. Instead, section 3—806(b) relates to a respondent's own actions, his refusal to attend, as related to the court through his counsel. 405 ILCS 5/3—806(b) (West 1996).

The Supreme Court of Illinois has addressed the standard for evaluating facial attacks on procedural due process grounds since the decision in *Barbara H. East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 687 N.E.2d 1050 (1997). In *East St. Louis Federation*, the court rejected an argument that a statute was facially unconstitutional because it failed to provide members of a local school board with a hearing before they could be dismissed by a government panel, even though the due process clause guaranteed them the right to a hearing. The court reasoned that, even though the statute did not require a hearing, the statute survived a facial attack because it did not bar the panel from conducting a hearing and, therefore, could operate constitutionally as to some school board members. *East St. Louis Federation*, 178 Ill. 2d at 421, 687 N.E.2d at 1063.

Given *East St. Louis Federation*, it is difficult to raise a successful facial attack on a statute on procedural due process grounds. As long as a statute allows a government body to provide adequate protection for a constitutionally protected interest, it need not specifically mandate such protections in every case. Further, reviewing courts are to presume statutes are constitutional and will construe them so as to uphold them when it is reasonably possible to do so. *Wilson v. Department of Revenue*, 169 Ill. 2d 306, 310, 662 N.E.2d 415, 417 (1996).

■ Deciding whether a statutory procedure comports with procedural due process involves a three-part analysis: first, we ask whether there exists a liberty or property interest that has been interfered with by the state; second, we examine the risk of an erroneous deprivation of such an interest through procedures already in place, while considering the value of additional safeguards; and third, we examine the effect the administrative and monetary burdens of additional procedures would have on the state's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976); *East St. Louis Federation*, 178 Ill. 2d at 415-16, 687 N.E.2d at 1060.

■ It has long been recognized that procedural due process guarantees a respondent the right to be present at his hearing in order to protect his liberty interest. See *Specht v. Patterson*, 386 U.S. 605, 610, 18 L. Ed. 2d 326, 330, 87 S. Ct. 1209, 1212 (1967). However, respondents may waive their constitutional rights. *People v. Johnson*, 75 Ill. 2d 180, 187, 387 N.E.2d 688, 691 (1979). A waiver of constitutional rights must be not only a voluntary act, but also a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Johnson*, 75 Ill. 2d at 187, 387 N.E.2d at 691, quoting *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469 (1970).

The risk of an erroneous deprivation of a respondent's right to be present is not high. It is true that a party to a commitment proceeding may have mental difficulties that affect his ability to waive his constitutional rights. However, parties are presumed competent until proved otherwise. See *People ex rel. Drury v. Catholic Home Bureau*, 34 Ill. 2d 84, 95, 213 N.E.2d 507, 512-13 (1966). This is true even if, as here, the respondent has been involuntarily committed in the past but the commitment order has expired. See *Drury*, 34 Ill. 2d at 95, 213 N.E.2d at 512-13.

■ We must examine the risk of erroneous deprivation in the context of the procedural safeguards already existing in the statute. *Mathews*, 424 U.S. at 541, 84 L. Ed. 2d at 503, 105 S. Ct. at 1492; *East St. Louis Federation*, 178 Ill. 2d at 419, 687 N.E.2d at 1061. The Code provides several safeguards to ensure a respondent's refusal to attend is voluntary. The court must provide the respondent personal notice of his legal status and his right to counsel and a hearing. 405 ILCS 5/3—205 (West 1996). Both the respondent and his attorney must be given notice of the time and place of the hearing. 405 ILCS 5/3—706 (West 1996). The statutory right to counsel has been interpreted by this court to include a right to effective assistance of counsel analogous to the right to counsel guaranteed by the sixth amendment in criminal proceedings. *In re Carmody*, 274 Ill. App. 3d 46, 54-55, 653 N.E.2d 977, 983-84 (1995). In this facial attack, we must assume these protections have been provided and, accordingly, the attorney is acting in good faith, has informed his client of the consequences of his decision, and is making a truthful statement at the request of his client.

Next we examine the specific procedure Perona seeks. Perona would require the court to question the respondent regarding his desire not to attend or otherwise assure itself by personal observation of the respondent that he is competent to make this decision. The extra costs—to both respondents and the State—of this proce-

dure are high in comparison to any additional protection this would provide. This would effectively require any respondent to be present before he can waive his right to be present. The competent respondent's right to refuse to attend at all would be eliminated.

More important, requiring attendance at any point would encourage—if not require—caregivers to physically force an unwilling respondent to attend. This would create a high risk of physical injury to the respondent and his caregivers, increase the cost of care, and infringe even further on the respondent's personal liberty. If the petition or representations of the respondent's counsel indicate these costs are warranted, the court clearly has the authority to require the respondent's attendance. See 405 ILCS 5/3—706 (West 1996). We cannot conclude due process requires the respondent's presence in every case before a waiver is valid.

In *In re Denby*, 273 Ill. App. 3d 287, 290-91, 653 N.E.2d 73, 75-76 (1995), this court held that, absent specific conduct at a hearing demonstrating confusion or delusional thought processes, a court could allow a respondent to waive his right to counsel at a recommitment hearing without first questioning him as to his capacity. This case is even more favorable to the State since it does not involve a *pro se* litigant entitled to special protection under the law. See *In re Click*, 196 Ill. App. 3d 413, 423, 554 N.E.2d 494, 500 (1990); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982).

Alternatively, Perona would require input from a medical professional as to a respondent's ability to waive his rights. The Code allows the court to appoint a physician to examine the respondent and make a detailed report of his condition. See 405 ILCS 5/3—803 (West 1996). However, requiring a report on the issue of capacity to waive the right to be present in every case would also cause great expense in exchange for little gain. Again, respondents are presumed competent, and a respondent's attorney may inform the court if he believes his client did not understand the notice or make an informed decision.

The due process right to be present at a commitment proceeding has been referred to as closely related to the sixth amendment right to be present at a criminal trial. See *Bell*, 384 F. Supp. at 1094. Under the sixth amendment, a defendant's refusal to attend is enough to constitute a valid waiver of the right to be present, without any additional showing the refusal was knowing and intelligent. See *Taylor v. United States*, 414 U.S. 17, 18-19, 38 L. Ed. 2d 174, 177, 94 S. Ct. 194, 194 (1973); *People v. Owens*, 102 Ill. 2d 145, 156-57, 464 N.E.2d 252, 258 (1984).

We find no basis in this case for creating a higher standard for

waiver of the due process right to be present at a hearing than for waiver of the sixth amendment right to be present at trial. A civil commitment is nonpunitive and lasts only as long as is necessary to address a respondent's problems. Because this is a lesser intrusion on the liberty of the respondent than a criminal conviction, it triggers lesser procedural due process rights. *United States v. Baker*, 45 F.3d 837, 844 (4th Cir. 1995). Any argument that the respondent's mental problems giving rise to the commitment proceeding may affect his ability to make an informed, rational choice is negated by the presumption of competence and the court's power to allow additional inquiry depending on the nature of the petition.

Perona argues the sixth amendment cases are distinguishable because he was never given an admonishment that the hearing would go forward in his absence even if he chose not to attend. Though such an admonishment is required by statute in criminal proceedings (725 ILCS 5/113—4(e) (West 1996); *People v. Garner*, 147 Ill. 2d 467, 483, 590 N.E.2d 470, 477 (1992)), it is not required as a constitutional matter (*Taylor*, 414 U.S. at 19-20, 38 L. Ed. 2d at 177-78, 94 S. Ct. at 195-96).

We stress that we are not holding additional assurances of a voluntary waiver of the right to be present are never required by due process. We only hold that the Code provides sufficient safeguards that the provisions allowing for waiver by refusal to attend are not facially unconstitutional.

## B. The Medication Order

■ Perona also challenges the trial court order subjecting him to involuntary psychotropic medication under section 2—107.1 of the Code. 405 ILCS 5/2—107.1 (West 1996). Perona first argues an order under section 2—107.1 of the Code was premature because there was no showing that he in fact refused to accept treatment. Section 2—107.1 applies only when it is necessary to administer psychotropic medication to an adult against his will. 405 ILCS 4/2—107.1(a) (West 1996). However, Attaluri's uncontested testimony was that Perona refused to take his medication in the past and again the morning of the hearing, after the prior medication order had expired.

Perona next argues the evidence was insufficient to support the trial court's judgment. Section 2—107.1 provides, in pertinent part:

> "Psychotropic medication shall not be administered to the recipient unless it has been determined by clear and convincing evidence that all of the following factors are present:
>> (A) That the recipient has a serious mental illness or developmental disability.
>> (B) That because of said mental illness or developmental

disability, the recipient exhibits deterioration of his ability to function, suffering, or threatening or disruptive behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision *** or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the psychotropic medication will outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the medication.

(F) That other less restrictive services have been explored and found inappropriate." 405 ILCS 5/2—107.1(a)(4) (West 1996).

Even though this section requires proof "by clear and convincing evidence," great deference is given to the trier of fact, and reversal is only warranted when its decision is manifestly erroneous. *In re Brazelton*, 245 Ill. App. 3d 1028, 1033, 615 N.E.2d 406, 408 (1993).

We find no manifest error here. The testimony of a single, uncontested expert witness, in conjunction with the recipient's own behavior in court, is sufficient to meet the State's burden of proof. See *Brazelton*, 245 Ill. App. 3d at 1033, 615 N.E.2d at 409. Attaluri's testimony that Perona had a serious mental illness related to all of the factors listed in section 2—107.1. She testified nonmedical services such as counseling had been attempted, but were unsuccessful.

The trial court could reasonably conclude Perona's ability to function had deteriorated and that he was exhibiting disruptive behavior. Perona's inability to remain both present and clothed demonstrated this and Attaluri's testimony established this conduct was recurring. While Perona's conduct may not subject him to risk while inside Zeller, it can still be considered in determining his overall ability to function. See *Brazelton*, 245 Ill. App. 3d at 1033, 615 N.E.2d at 409 (when assessing ability to function, court could consider prehospitalization incident in which recipient responded to delusions while driving by almost driving off a bridge). Moreover, Attaluri testified Perona was depressed and had stopped eating regularly as well, demonstrating that his illness had begun to inhibit his functioning within the hospital.

Attaluri testified the benefits of the medication outweighed the harm. For medical testimony to be clear and convincing, it is sufficient if the expert indicates the basis of his diagnosis by having directly observed the recipient on several occasions. *In re Schaap*, 274 Ill. App. 3d 497, 502, 654 N.E.2d 1084, 1087 (1995). A state expert's opinion need not include factual support. *In re Jeffers*, 239

Ill. App. 3d 29, 36-37, 606 N.E.2d 727, 732 (1992), *aff'd after remand*, 272 Ill. App. 3d 44, 47, 650 N.E.2d 242, 245 (1995). Perona attempts to undercut Attaluri's testimony, arguing he had been taking the medication for 10 days prior to the petition and yet his condition did not improve. However, Attaluri also testified the medication did not take effect immediately and Perona's behavior had improved after prior extended use of Olanzapine.

Perona argues he was to be subjected to drugs different from those he was subjected to in the past. It is not necessary for a respondent to have tried a particular regimen of medicine before in order for his doctor to make a valid determination its benefits would outweigh the harm it imposed. See *Schaap*, 274 Ill. App. 3d at 499, 654 N.E.2d at 1085. The expert's opinion alone is *prima facie* proof the benefits of a medication plan outweigh the harm. *Jeffers*, 239 Ill. App. 3d at 36-37, 606 N.E.2d at 732. However, an order allowing psychotropic drugs cannot be based on a new regimen so poorly defined that the expert could not have meaningfully weighed the benefits and harm involved. See *In re Kness*, 277 Ill. App. 3d 711, 720-21, 661 N.E.2d 394, 399-400 (1996).

In this case, the trial court properly relied on Attaluri's opinion. The regimen was not entirely new. Perona had been on different neuroleptic drugs before, including Olanzapine, which Attaluri wanted to continue. Perona had been on antidepressants before. The only aspect of Attaluri's proposed regimen that was entirely new was a second drug, either Prolixin or Haldol. While Attaluri did not specify which drug would be used, she did narrow it down to those two, both neuroleptic drugs, and Perona presented no evidence they had different side effects. Attaluri testified that two neuroleptic drugs were used together on rare occasions because they were more effective together. There was no evidence of any potential negative interaction effects between the medications in the new regimen.

Attaluri testified Perona lacked the capacity to make a reasoned decision regarding administration of psychotropic medication. The record supports a finding that Perona did not understand the benefits of treatment. Attaluri testified Perona no longer acknowledged he had a mental illness, did not believe his hallucinations or unhealthy eating habits were a problem, and refused to talk about them. See *Kness*, 277 Ill. App. 3d at 719, 661 N.E.2d at 399 (recipient lacked ability to make reasoned decisions about medication, partially because he did not acknowledge he was suffering from mental illness). Perona did not present any rational explanation for his refusal to take the medications. *Cf. In re Israel*, 278 Ill. App. 3d 24, 39, 664 N.E.2d 1032, 1041 (1996).

### III. CONCLUSION

For all of the reasons stated, we affirm.

Affirmed.

GREEN and STEIGMANN, JJ., concur.