*In re* MICHELLE J., Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Michelle J., Respondent-Appellant).—*In re* SAM S., Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Sam S., Respondent-Appellant).

Fifth District   No. 5—01—0753, 5—01—0770 cons.

Opinion filed January 30, 2003.—Rehearing denied February 14, 2003.

Jeff M. Plesko and Anthony E. Rothert, both of Guardianship and Advocacy Commission, of Alton, for appellants.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

On August 23, 2001, Michelle J. and Sam S. (collectively respondents) were persons found to be subject to involuntary admission at Alton Mental Health Center. At the hearings for involuntary admission, the expert witnesses for the State testified that neither of them was able to interview respondents prior to the hearing and that their opinion testimony relied upon observations of respondents, a review of respondents' charts and records, prior knowledge of respondents, and discussions with hospital staff who regularly interacted with respondents. Both Michelle J. and Sam S. appeal the orders finding them subject to involuntary admission. They contend that the experts' testimony did not conform with section 3—807 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—807 (West 2000)). Respondents claim that because section 3—807 requires a psychiatrist, clinical social worker, or clinical psychologist to "examine" a respondent and because the experts did not interview respondents, the requirement of section 3—807 was not met and the court's orders must be reversed. We affirm.

## FACTS

### 1. Michelle J.'s Hearing

Dr. Lenora Brown, a licensed clinical psychologist employed at Alton Mental Health Center, testified that she knew Michelle J. and had been a consultant to Michelle J.'s treatment team. Dr. Brown stated

that she observed Michelle J. on August 20, 2001, the day of her admission to Alton Mental Health Center. Additionally, Dr. Brown attempted to interview Michelle J. on August 22, 2001, for the purpose of Michelle J.'s hearing for involuntary admission. On August 22, before conducting the interview, Dr. Brown attempted to advise Michelle J. of her rights, but Michelle J. could not respond, so Dr. Brown discontinued the interview. Dr. Brown stated that because of Michelle J.'s deteriorated clinical condition, Dr. Brown did not believe that Michelle J. could make an informed decision concerning her rights. However, Dr. Brown stated that she had reviewed Michelle J.'s chart and records and talked with staff about Michelle J.'s condition and behavior.

Dr. Brown testified that Michelle J. has a diagnosis of schizophrenia, paranoid type. Dr. Brown stated that Michelle J. has had prior admissions to Alton Mental Health Center, the last one being in August 2000. Michelle J. has also had multiple mental health admissions to St. Mary's Hospital, the most recent being July 2001. Dr. Brown reported that at the time of Michelle J.'s admission to Alton Mental Health Center on August 20, Michelle J.'s sister, with whom Michelle J. lives, reported that Michelle J. had inserted a metal pipe into her vagina and stated that she wanted to kill herself. When Michelle J. was admitted to Alton Mental Health Center, she was unkempt, disoriented, and suspicious. Michelle J. was talking to herself and laughing inappropriately. When Michelle J. was at the emergency room of the hospital, she was restless, wandering in and out of the room. Michelle J. was also somewhat hostile and had an occasional temper outburst. Dr. Brown was aware that Michelle J. suffered from postpartum depression following the recent birth of her child.

Dr. Brown also testified that Michelle J. hears voices, has paranoid ideations, demonstrates an unstable mood, and is anxious and agitated. Michelle J. also paces and makes bizarre gestures. On the day of Michelle J.'s admission to Alton Mental Health Center, Michelle J. was given "stat medication" and was placed in restraints for self-injurious behavior. On August 21, 2001, Michelle J. complained of insomnia and of snakes in her bed. It was Dr. Brown's opinion that Michelle J. is in need of involuntary admission to Alton Mental Health Center because Michelle J. is a danger to herself.

Michelle J. also testified at the hearing. Michelle J. stated that she is 19 years old and that she lives with her sister and her father. Michelle J. also stated that her sister and her father make sure she takes her medication, although Michelle J. was not sure what medications she takes. Michelle J. stated that she takes medications for her "nerves" and for her emotions when she becomes "moody like this." Michelle J. admitted that she sometimes hears voices and that she sometimes sees things that other people do not see.

Michelle J. stated that she has two children who are "with the State" until she can get herself together. Michelle J. also stated that she is going crazy because she is afraid she will never see her baby.

## 2. Sam S.'s Hearing

At Sam S.'s hearing for involuntary admission, Sam S.'s attorney presented Sam S.'s signed waiver of his presence at the hearing. Although Sam S.'s hearing was held at Alton Mental Health Center, Sam S. had recently been transferred to Chester Mental Health Center. Sam S.'s attorney stated that it was his opinion that Sam S.'s current state is such that Sam S.'s presence at the hearing would cause Sam S. severe emotional harm. The court accepted the waiver of Sam S.'s presence and indicated that Sam S.'s hearing on August 23 was for a 180-day review.

Dr. Debra Ferguson, the chief psychologist at Alton Mental Health Center, testified that she is not directly involved with Sam S.'s treatment but that she had reviewed Sam S.'s progress notes and that she is familiar with the "significant features of his treatment." Dr. Ferguson also testified that she had reviewed Sam S.'s chart and records and that she had talked to staff concerning Sam S.'s condition and behavior. Dr. Ferguson attempted to meet with Sam S. for the purpose of interviewing him for his upcoming hearing for involuntary admission, but she was unable to interview him because Sam S. was in restraints at the time.

Dr. Ferguson stated that Sam S. has been continuously admitted at Alton Mental Health Center since 1995. Sam S. has been an involuntary admission since 1997. At the time of Sam S.'s initial involuntary admission in 1997, Sam S.'s clinical condition had deteriorated significantly, and Sam S. was actively psychotic and delusional. Dr. Ferguson stated that Sam S.'s diagnosis is "schizophrenia paranoid type continuous."

Dr. Ferguson testified that Sam S.'s behavior had recently become increasingly aggressive. Dr. Ferguson's review of Sam S.'s records from Chester Mental Health Center established that Sam S. continues to be actively psychotic and threatening to others and that these behaviors had required Sam S. to be in full restraints or in seclusion for a period of 10 days. Dr. Ferguson opined that Sam S. presents a substantial danger to others, as evidenced by his violent and aggressive acting-out behavior, while Sam S. is unable to take care of his own basic medical needs.

Sam S.'s records indicate that Sam S. is diabetic and mentally ill but that he denies both maladies. Sam S. refuses to take insulin for his diabetes and refuses to take medication for his mental illness. Ad-

ditionally, the most recent petition for involuntary admission filed in Sam S.'s case indicates that Sam S. is very paranoid and delusional and that Sam S. attacked another patient on July 21, 2001, while the patient slept, causing a total loss of the patient's right eye. It was also reported in the certificates of need attached to the petition for Sam S.'s involuntary admission that Sam S. is unable to sleep at night because he is afraid someone might attack him.

The court determined from the records and the testimony at respondents' hearings that both were in need of mental health treatment and were subject to involuntary admission, and it ordered that they be hospitalized in the Department of Human Services.

## ANALYSIS

As noted previously, respondents were found subject to involuntary admission on August 23, 2001, and both have appealed their orders. Counsel for respondents moved to consolidate their cases because both cases raise the same issue—that the requirement of section 3—807 (that an expert who testifies at a hearing for involuntary admission must "examine" a respondent before the hearing) was not met because the experts did not "interview" either respondent. This court granted the motion to consolidate. Essentially, respondents claim that an examination of a respondent by an expert, as contemplated by section 3—807 of the Code, means a one-on-one interview with the respondent. Respondents cite to *In re Barbara H.*, 183 Ill. 2d 482 (1998), to support their claim.

Section 3—807 states as follows:

"No respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. The respondent may waive the requirement of the testimony subject to the approval of the court." 405 ILCS 5/3—807 (West 2000).

Based on this language, respondents contend that "examine" means an interview with the respondent.

Mental health proceedings are for the benefit of both the public and the patient. *In re Collins*, 102 Ill. App. 3d 138 (1981). For an involuntary admission of a respondent, the State must prove by clear and convincing evidence that the person is in need of mental treatment and that the person is reasonably expected to harm herself or others. *In re Dukes*, 57 Ill. App. 3d 618 (1978). A doctor who testifies at a respondent's hearing for involuntary admission can base his or her testimony upon observations of a respondent's condition. See *In re Dukes*, 57 Ill. App. 3d at 620; *In re Whitehouse*, 56 Ill. App. 3d 245, 249 (1977). In *In re Pritchett*, 148 Ill. App. 3d 746 (1986), the review-

ing court did not find the expert's opinion invalidated because there was no communication between the doctor and the respondent, but the court instead found that the doctor's opinion, which was based upon the doctor's examination of letters written by the respondent, other medical staff's observations recorded in the respondent's charts, petitions signed by residents in the community where the respondent lived, and a consultation with another physician, was sufficient for the court to find the respondent subject to involuntary admission. *In re Pritchett*, 148 Ill. App. 3d at 750.

■ Based on the foregoing authorities, we find that an examination of a respondent, as contemplated in section 3—807, is not limited to an interview of the respondent. An examination can include the expert's observations of the respondent, a review of the respondent's charts and records, a consultation with others involved in the day-to-day care of the respondent, and whenever possible an interview with the respondent. While it is highly desirous that an expert interview a respondent prior to a hearing for involuntary admission, a respondent's mental illness does not always permit an interview. Where, as here, the expert's testimony, combined with the other evidence, clearly and convincingly established that Michelle J. and Sam S. were persons in need of mental treatment and were subject to involuntary admission, we do not find that an expert's interview with a respondent is absolutely required by section 3—807 of the Code, where the experts examine the respondent's medical records and talk to workers intimately involved with the respondent's day-to-day behaviors and conditions. Our decision is influenced by the fact that the experts in these cases attempted to interview respondents but were unsuccessful due to respondent's impaired conditions. These experts did examine respondents and found them in such psychiatric conditions that verbal interrogation was impossible and that respondents lacked the capacity to consent to the verbal interrogations.

■ We find that respondents' cases are inapposite to the case relied on by respondents, *In re Barbara H.*, 183 Ill. 2d 482. In *In re Barbara H.*, the Illinois Supreme Court determined that "[Barbara H.'s] primary argument *** was that section 3—806 of the *** Code (405 ILCS 5/3—806 (West 1996)), which allowed the public defender to waive her presence at the August 2 hearing, was unconstitutional." *In re Barbara H.*, 183 Ill. 2d at 488. The court held that there was no showing that the public defender who had purported to act on Barbara H.'s behalf had such authority, and it reversed the findings of the trial court because the requirements of the Code regarding such waivers of a respondent's right to be present were not satisfied. *In re Barbara H.*, 183 Ill. 2d at 488. In *dicta*, the court further stated that Barbara H.'s

hearing for involuntary admission was defective because the State's "entire case was predicated on the testimony of a physician who had not personally examined her." *In re Barbara H.*, 183 Ill. 2d at 497. "Although the doctor had treated Barbara H. in the past, he admitted on direct examination that he *had not had an opportunity* to perform a psychiatric examination on her in connection with this case and her present situation." (Emphasis added.) *In re Barbara H.*, 183 Ill. 2d at 497. From the supreme court's statement, it is unclear what the doctor actually testified to at the hearing or if he even attempted to talk to the respondent. In comparison, both of the experts in respondents' cases attempted to interview respondents, but because of respondents' mental illnesses, the experts were not able to conduct a successful interview. This differs from *In re Barbara H.*

It is also noteworthy that in respondents' cases, counsel does not contend that they were not found subject to involuntary admission by clear and convincing evidence. They simply contend that the language of section 3—807 mandates an examination in order for an involuntary admission to occur. We find that the trial court's orders finding respondents subject to involuntary admission were based on clear and convincing evidence and that the requirement of section 3—807 of the Code has been met.

## CONCLUSION

For the foregoing reasons, the judgments of the circuit court of Madison County concerning respondents are affirmed.

Affirmed.

MAAG and WELCH, JJ., concur.