(No. 95927.–

*In re* MICHELLE J. *et al.* (The People of the State of Illinois, Appellee, v. Michelle J. *et al.*, Appellants).

*Opinion filed April 1, 2004.*

THOMAS, J., specially concurring.

Anthony E. Rothert, of Alton, and Elvis C. Cameron and Jeff M. Plesko, of Anna, for appellants.

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Linda D. Woloshin and Mary Beth Burns, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Before us are two unrelated cases involving respondents admitted involuntarily to state-operated mental health facilities pursuant to the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1—100 *et seq.* (West 2000)). The cases were heard on the same day by the same trial judge. In each instance, the court rejected challenges by the respondents' counsel that the State had failed to comply with section 3—807 of the Code (405 ILCS 5/3—807 (West 2000)), which requires that certain testimony be presented before a person may be found subject to involuntary admission. The appellate court consolidated the cases and affirmed. 336 Ill. App. 3d 1026. We granted the respondents' petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm in part and reverse in part.

The pertinent facts are straightforward. The two respondents before us are known as Sam S. and Michelle J. At the time of the events giving rise to this appeal, Sam S. had already been determined to be a person subject to involuntary admission under the Code and had been admitted, involuntarily, to a state-operated mental health facility by order of the circuit court. In July of 2001, the State filed a petition pursuant to section 3—813

of the Code (405 ILCS 5/3—813 (West 2000)) to extend Sam's involuntary admission for an additional period.

Proceedings to extend involuntary admissions are subject to the same provisions of the Code as those governing initial involuntary admissions. 405 ILCS 5/3—813(b) (West 2000). A hearing is to be conducted. See 405 ILCS 5/3—702, 3—813 (West 2000). Pursuant to section 3—807 of the Code,

"[n]o respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. The respondent may waive the requirement of the testimony subject to the approval of the court." 405 ILCS 5/3—807 (West 2000).

The hearing on the State's petition was conducted August 23, 2001, in Madison County. Sam was not present. The preceding month he had been transferred to a different state-operated mental health facility in another county. Although he could have requested a change of venue based on the transfer (405 ILCS 5/3—800(a) (West 2000)), he did not. He likewise declined to travel back to Madison County to appear. A written waiver of Sam's right to be present at the hearing was filed by his attorney (405 ILCS 5/3—806 (West 2000)). The validity of that waiver was not challenged, and the matter went forward in Sam's absence.

During the course of the hearing, the State called only one witness to testify in person. She was Debra Ferguson, chief psychologist at the Alton Mental Health Center, where Sam had been hospitalized prior to his recent transfer. Ferguson testified that she was "not directly involved in his treatment" and has "never been directly involved in his treatment." Ferguson did not meet with Sam personally for the purposes of the hearing. She told the court that she had the opportunity to interview him two weeks earlier, but that because "he was in a compromised condition and was actually in

restraints" at that time, she was unable to go forward. Her recollection was that the last time she had met with Sam personally was six months earlier.

Although Ferguson was unable to examine Sam herself, Sam's condition subsequently improved. According to Ferguson, a psychiatrist, a psychologist and a clinical social worker were all able to examine him prior to the hearing. None of those health-care professionals, however, were called by the State to substantiate its case. Instead, the State argued for continued involuntary commitment based solely on the strength of what Ferguson had discerned from her review of Sam's records and conversations with staff at the facility where he was hospitalized.

In opposing the State's case, Sam's attorney argued that because Ferguson had not examined Sam herself, her testimony was not sufficient to meet the State's burden under section 3—807 of the Code (405 ILCS 5/3—807 (West 2000)). The circuit court rejected that argument. Based on Ferguson's conclusions, the court granted the State's petition, found that Sam was a person subject to involuntary admission, and ordered that he continue to be held in a state-operated mental health facility.

Michelle J.'s case involved different circumstances from Sam's. Michelle was initially admitted to the Alton Mental Health Center on an emergency basis pursuant to section 3—600 of the Code (405 ILCS 5/3—600 (West 2000)) based on a certification indicating that she was mentally ill and required immediate hospitalization to protect herself and others from serious harm. The hearing to determine whether Michelle was a person subject to involuntary admission was conducted shortly thereafter, on the same day and before the same judge as in Sam's case.

As in Sam's case, the proceedings against Michelle were subject to section 3—807 of the Code, which

precludes involuntary admission "unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined [the respondent] testifies in person at the hearing." 405 ILCS 5/3—807 (West 2000). To comply with section 3—807, the State called Lenora Brown, a licensed clinical psychologist employed at the Alton Mental Health Center. Brown testified that she attempted to interview Michelle the day before the hearing, but discontinued the interview on the grounds that Michelle did not appear capable of making "an informed decision on whether or not to waive her rights." In contrast to the State's witness in Sam's case, however, Brown did have personal knowledge of Michelle's condition. Brown knew Michelle, interacted with her during a group session conducted three days earlier, and served as a consultant to her treatment team. Brown's assessment of Michelle was therefore not limited to information she acquired secondhand through Michelle's medical records and conversations with other staff.

Michelle was represented by the same attorney who represented Sam, and he raised the same challenge to the sufficiency of the State's case. He argued that Brown could not be considered to have examined Michelle and that her testimony was therefore not sufficient to meet the State's burden under section 3—807 of the Code (405 ILCS 5/3—807 (West 2000)). As it did in Sam's case, the circuit court rejected that argument. Based on Brown's testimony, the court granted the State's petition, found that Michelle was a person subject to involuntary admission, and ordered that she be held in a state-operated mental health facility.

Sam and Michelle each appealed. Their appeals presented a single question: Did the State adequately comply with section 3—807 of the Code? The appellate court answered this question in the affirmative and upheld the circuit court's judgments. In so doing, it

concluded that the statute's requirement of testimony from a "psychiatrist, clinical social worker or clinical psychologist who has examined [the respondent]" does not mean that the expert must have examined the respondent personally. The appellate court recognized that a personal interview with the respondent prior to a hearing for involuntary commitment is "highly desirous," but found that such an interview is not absolutely required by the Code where, among other things, the expert has examined the respondent's medical records and talked to "workers intimately involved with the respondent's day-to-day behaviors and conditions." 336 Ill. App. 3d at 1031.

Whether section 3—807 of the Code may be satisfied based on the testimony of an expert witness who has not personally examined the respondent presents a question of statutory construction, which we review *de novo.* See *In re Mary Ann P.,* 202 Ill. 2d 393, 404 (2002). The issue has been considered by our court before. We addressed the requirements of section 3—807 of the Code in *In re Barbara H.,* 183 Ill. 2d 482 (1998). In that case, the State's sole expert had not conducted a psychiatric examination of the respondent. Rather, she formulated her diagnosis of the respondent's condition based on review of the respondent's medical record's, conversations with the facility's staff, personal observations, and her past experience with respondent. See *In re Barbara H.,* 288 Ill. App. 3d 360, 363 (1997). On appeal, we held that because the expert had not personally examined the respondent in connection with the current case and the respondent's present situation, the requirements of section 3—807 were not satisfied. Although the statute gave respondent the right to waive the requirement of testimony from an expert who had examined her, subject to approval by the court, no such waiver had been made. Because the proceedings failed to comport with statutory

requirements, the judgments of the circuit court ordering respondent's involuntary admission to a mental health facility and authorizing the staff to administer psychotropic medication to her against her will were reversed outright. *In re Barbara H.*, 183 Ill. 2d at 497-98.

Under *In re Barbara H.*, that portion of the appellate court's judgment pertaining to Sam's involuntary admission cannot be sustained. In the proceedings against Sam, as in *In re Barbara H.*, the State premised its case exclusively on the testimony of an expert who had not conducted a personal examination of the respondent in connection with the current proceeding and the respondent's present situation. In Sam's case, as in *In re Barbara H.*, the statute was therefore not satisfied. Moreover, as in *In re Barbara H.*, there was no waiver of the statutory requirements.

The appellate court attempted to distinguish *In re Barbara H.* on the grounds that our opinion was unclear as to whether the expert there had actually attempted to talk with the respondent. The appellate court's theory was that if the record demonstrated that the expert made an effort to interview the respondent but was unable to do so due to the respondent's conduct or impaired condition, section 3—807 could be satisfied without a personal examination. Testimony of an expert based on personal observations, review of medical records and consultation with others involved in the respondent's care would suffice. 336 Ill. App. 3d at 1031-32.

A threshold problem with the appellate court's analysis is that it overlooks what took place in *In re Barbara H.* The psychiatrist who testified for the State in that case did attempt to conduct a personal examination of the respondent. In fact, she tried to perform a psychiatric examination of the respondent three times. The reason she did not succeed is that the respondent refused to talk to her. Although we did not detail these

facts in our opinion, they were clearly set out in the appellate court's disposition (*In re Barbara H.*, 288 Ill. App. 3d at 363) and were known to us when we ruled as we did. Accordingly, *In re Barbara H.* cannot be read to permit recognition of an exception to the personal examination requirement based on the expert's inability to conduct a personal interview.

A second problem with the appellate court's approach is that the exception it seeks to create is inapplicable to Sam's situation. The appellate court was concerned about what could be done when the respondent's mental illness was such that verbal interrogation was impossible. Sam's illness was not that severe. Ferguson, the State's expert, worked at a different institution than the one where Sam was being held at the time of the hearing. The reason she did not examine him personally was that he was restrained and not in a position to be interviewed when her schedule allowed her to travel there to see him. It was not because he was incapable of being interviewed prior to the hearing. To the contrary, the record showed that after Ferguson's visit, a psychiatrist, a psychologist and a clinical social worker were all able to examine Sam in time for the hearing.

Had the State called one of those three other experts, the requirements of section 3—807 would have been met. The State offers no explanation as to why it chose to rely on someone else instead. We infer that it was simply a matter of administrative convenience. Ferguson worked in the county where the hearing was held. The other experts did not. Under these circumstances, there is no legitimate basis for deviating from section 3—807's explicit requirements. Statutory mandates cannot be compromised simply to accommodate the convenience of the State's witnesses.

Our conclusion that the expert who testified in Sam's case did not meet the requirements of section 3—807 is

further supported by basic principles of statutory construction. Examining a person's medical records, which is what Ferguson did, is not the same as examining the person, which is what the statute specifies. If the General Assembly thought that reviewing a respondent's medical charts and interviewing other staff members were an adequate substitute for an actual examination, it could have included such language in the statute. It did not. We cannot rewrite a statute under the guise of statutory construction or depart from the plain language of a statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. *In re Mary Ann P.*, 202 Ill. 2d at 409.

These principles apply with particular force here. Section 3—807 of the Code is an integral part of the mechanism established by the General Assembly for involuntary admission of individuals requiring mental health services. Because involuntary administration of mental health services implicates fundamental liberty interests, statutes governing the applicable procedures should be construed narrowly. *In re Barbara H.*, 183 Ill. 2d 482, 498 (1998).

We note, moreover, that the statutory provisions governing court hearings under the Code have been amended by the General Assembly on several occasions since our decision in *In re Barbara H.*, 183 Ill. 2d 482 (1998). In revisiting the Code's requirements, the legislature has made no revisions to section 3—807. We therefore presume that it has acquiesced in our construction of the law. For us to change course now would be tantamount to an amendment of the statute itself. *Wakulich v. Mraz*, 203 Ill. 2d 223, 233-34 (2003).

As a final basis for justifying the result it reached, the appellate court found it noteworthy that respondents' counsel had not contended that his clients had not been found subject to involuntary admission by clear and

convincing evidence. 336 Ill. App. 3d at 1032. The court's invocation of the "clear and convincing" standard was a reference to section 3—808 of the Code (405 ILCS 5/3—808 (West 2000)), which sets forth the burden of proof the State must meet. It provides:

> "No respondent may be found subject to involuntary admission unless that finding has been established by clear and convincing evidence."

Although respondents' lawyer did not specifically invoke the language of this statute, he clearly argued in the circuit court that the State had not met its burden of proof. His position was straightforward and unambiguous. To meet its burden of proof under the Code, the State must call an expert who meets the requirements of section 3—807. The expert witnesses called by the State were not qualified to testify under section 3—807. Because those witnesses were the only ones to give evidence on the State's behalf, the State presented no one who was qualified under the statute. Without the testimony of a qualified witness, the State "ha[d] not met its burden."

Counsel's failure to invoke the "clear and convincing" standard is of no consequence. If the State adduced no valid evidentiary basis for the relief it sought, it necessarily follows that it failed to establish its case by clear and convincing evidence. The only way to avoid this conclusion is by holding that the State's burden can somehow be satisfied in the absence of testimony from a qualified expert pursuant to section 3—807. No such conclusion is possible. As we held in *In re Brown* and as we have reiterated in this disposition, a judgment ordering involuntary commitment cannot be affirmed in the absence of testimony that comports with section 3—807's requirements.

Although the appellate court's judgment regarding the involuntary admission of Sam S. cannot be sustained, we believe that the court reached the correct result with

respect to Michelle J. The witness called by the State in Michelle's case did testify that she had been unsuccessful in her attempt to interview Michelle the day before the hearing. Unlike the expert in Sam's case, however, she was directly involved in the respondent's care. She testified that she served as a consultant to Michelle's treatment team and was able to meet with Michelle personally in a group session. The session related to the psychiatric issues that gave rise to the involuntary admissions process and occurred while that process was underway. From the materials before us, it appears that the session took place within 72 hours of the hearing. We do not know the length or depth of the session, but we see nothing in the materials before us to suggest that it was not adequate to enable the expert to draw an informed judgment as to Michelle's psychiatric condition at the time of the hearing. Under these circumstances, we cannot say that the requirements of section 3—807 were not satisfied.

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed with respect to the proceedings against Sam S. They are affirmed with respect to the proceedings against Michelle J.

*Judgments affirmed in part*
*and reversed in part.*

JUSTICE THOMAS, specially concurring:

I agree with the result in these consolidated cases. However, I cannot agree with the majority that this court's decision in *Barbara H.* can be salvaged in its entirety. In my opinion, we must repudiate two paragraphs of that opinion if we are going to have a workable rule for the lower courts to follow.

The principal holding in *Barbara H.* was that the public defender had not validly waived Barbara H.'s right to be present at the involuntary commitment hearing. *Barbara H.*, 183 Ill. 2d at 494-96. After so holding, this

court noted some additional problems with the involuntary commitment hearing. One of the problems was that the court did not believe that the State had supported its case with the testimony of a psychiatrist who had examined Barbara H.:

> "The State likewise had no information regarding whether Barbara H.'s attendance would pose a risk, substantial or otherwise, of serious physical or emotional harm to her. Indeed, the State had no direct evidence of any facet of Barbara H.'s condition. Its entire case was predicated on the testimony of a physician who had not personally examined her. Although the doctor had treated Barbara H. in the past, he[1] admitted on direct examination that he had not had an opportunity to perform a psychiatric examination on her in connection with this case and her present situation.
>
> Section 3—807 of the Mental Health Code expressly provides:
>
> > 'No respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. The respondent may waive the requirement of the testimony subject to the approval of the court.' 405 ILCS 5/3—807 (West 1996).
>
> Because the sole witness to testify for the State had not examined Barbara H., this statute was not satisfied. In addition, the requirement of the testimony was not waived." *Barbara H.*, 183 Ill. 2d at 497.

In my view, the psychiatrist's testimony in Barbara H. was sufficient to satisfy the statutory requirement of an examination, and this court erred in concluding otherwise. Dr. Husain's testimony, as detailed in the appellate court opinion (*Barbara H.*, 288 Ill. App. 3d at 363-64), shows that she was intimately familiar with Barbara H.'s condition. Barbara H. had been her patient for a six-month period that ended three months before

---

[1]According to the appellate court opinion, the doctor was a woman. See *In re Barbara H.*, 288 Ill. App. 3d 360, 363 (1997).

the hearing. Importantly, Dr. Husain attempted to conduct a current examination of Barbara H. on three separate occasions, and each time Barbara H. refused to talk to her. Thus, Dr. Husain's diagnosis of the respondent "was based on her review of the medical records, conversation with the staff, personal observations, and her past experience with the respondent when Barbara H. was her patient for a six-month period ending in May 1996." *Barbara H.*, 288 Ill. App. 3d at 363. Neither in *Barbara H.* nor in the current opinion does this court explain what else it would have required this psychiatrist to have done. This is clearly not like the situation in *Sam S.*, in which the State relied upon someone who had never been involved with Sam's treatment and who only attempted to examine him one time. Moreover, in *Sam S.* the evidence was that the doctor could not examine him because he was in restraints at the time. In *Barbara H.* the evidence was that a doctor who had been intimately involved in the respondent's treatment attempted to speak with the respondent on three occasions and the respondent refused to talk to her. Is the majority holding that a respondent can avoid involuntary commitment simply by refusing to speak with the doctor assigned to examine him or her?

When the disposition of Barbara H.'s case is compared with Michelle J.'s, it will be difficult for the lower courts to discern what our rule is with respect to this issue. In *Barbara H.* we held insufficient the testimony of a doctor who had personally treated the respondent for six months and had updated her knowledge of the case through conversations with staff, personal observations, and a review of medical records. Further, she attempted three examinations of the respondent, but the respondent refused to speak with her. By contrast, in Michelle J.'s case we hold sufficient the testimony of a psychiatrist who was merely a consultant to Michelle J.'s treatment

team and who had met with her in a group session. The doctor attempted to interview Michelle J. the day before the hearing, and Michelle J. refused to speak with her. As the majority admits, we know nothing about the group session:

> "We do not know the length or depth of the session, but we see nothing in the materials before us to suggest that it was not adequate to enable the expert to draw an informed judgment as to Michelle's psychiatric condition at the time of the hearing." 209 Ill. 2d at 439.

Because the group session occurred within 72 hours of the hearing, the majority holds it sufficient to allow the testifying doctor to give an informed opinion as to Michelle J.'s condition. 209 Ill. 2d at 439.

Several problems are apparent with this approach. First, the majority acknowledges that "[w]e cannot rewrite a statute under the guise of statutory construction or depart from the plain language of a statute by reading into it exceptions, limitations, or conditions not expressed by the legislature." 209 Ill. 2d at 437. If this is true, how can we write a 72-hour time limit into the statute? Second, how can we say that an observation of the respondent in a group session by a consultant to the respondent's treatment team (*Michelle J.*) is an "examination" for purposes of the statute, but a review of medical records, conversations with staff, and personal observations by a treating physician intimately familiar with the respondent's treatment (*Barbara H.*) is not? Third, how can one attempt to speak with the respondent be sufficient to satisfy the statute while three attempts are insufficient? I do not see how the lower courts will be able to discern a workable rule from these opinions.

Both in *Barbara H.* and in *Michelle J.*, a physician familiar with the respondent's case attempted a personal interview with the respondent, and the respondent refused to speak with the doctor. In each of these cases we should say that the State satisfied the requirement of

an examination. In my opinion, no rule is workable other than one that requires the doctor to attempt a personal interview, but if the respondent refuses, then the statutory examination may be based on discussions with treating staff and a review of medical records. The majority's attempt to forge a workable rule out of this case and *Barbara H.* will cause confusion for the lower courts and result in wholly illogical decisions. We made a mistake in *Barbara H.*, and we owe it to the courts to fix it.