THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID BARNARD, Defendant-Appellant.

Fifth District   No. 80-230

Opinion filed April 28, 1981.

---

[1] Justice Moses W. Harrison replaced Justice Dorothy W. Spomer, who left after oral argument.

John H. Reid, of State Appellate Defender's Office, of Mt. Vernon (A. Jeffrey Weiss, of counsel), for appellant.

Terrence J. Hopkins, State's Attorney, of Benton (Martin N. Ashley and Nicholas B. Svalina, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WELCH delivered the opinion of the court:

David Barnard was convicted of three counts of taking indecent liberties with a child on March 19, 1980, following a jury trial at which he represented himself with an assistant public defender appointed to assist him. Barnard was sentenced to 13 years in prison on each count, the sentences to run concurrently.

On appeal the defendant maintains that his behavior prior to trial raised a *bona fide* doubt of his fitness to stand trial and imposed a duty on the court to hold a fitness hearing on its own motion. Also, since one judge refused to allow him to waive counsel and proceed *pro se*, the defendant maintains that it was error for another judge to accept that waiver without a determination of the defendant's fitness to stand trial.

On October 29, 1979, David Barnard was charged by information with three counts of taking indecent liberties with two children the day before. He was arrested and brought before Judge Robert Hill the same day. Judge Hill appointed E. Kyle Vantrease, a public defender, to represent Barnard after finding him to be indigent.

On November 21, 1979, a preliminary hearing was held before Judge Loren Lewis. Kyle Vantrease represented the defendant. Barnard conferred with Vantrease at a recess in the hearing, but did not testify. Probable cause was found, and Barnard was bound over for trial.

On December 18, 1979, Barnard appeared for arraignment before Judge Lewis with Vantrease, his lawyer. At first he stated he did not understand what he was charged with. After the judge repeated the charges, Barnard indicated he did not have any questions. The defendant, when asked how he pleaded, conferred briefly with his attorney, then informed the court that he wished to dismiss his counsel. Judge Lewis questioned Barnard and warned him of the difficulty of proceeding *pro se* to a jury trial. After conferring again with Barnard, Vantrease reported to the judge that the defendant said he hadn't eaten for seven days. Judge Lewis denied Barnard's motion to dismiss his counsel and set the case for trial, stating that he felt Barnard was not in any condition to make the decision to represent himself at that time. Barnard announced that he felt

the judge was prejudiced against him and should recuse himself. The judge told Barnard to reduce the motion to writing and it would be granted.

January 2, 1980, Kyle Vantrease filed a motion for the appointment of a psychiatrist to examine the defendant, report, and be available to testify regarding the defendant's mental state at the time of the alleged offense. On January 31, 1980, the defendant's answer to the State's discovery motion was filed, indicating insanity as a possible intended defense.

On February 1, 1980, the state's attorney filed a motion for psychiatric examination by a psychiatrist named by the prosecutor for the purpose of challenging the defense of insanity. At no time did either side file a motion for a hearing on the defendant's fitness to stand trial. The State's motion for a psychiatric examination was granted and the exam was scheduled for February 12, 1980. The trial was scheduled for February 19, 1980.

The state's attorney discovered in the court file a *pro se* motion for discharge of counsel and representation *pro se* that had been filed by the defendant on January 30. No copies had been served on anyone and it had not been brought to the attention of the court. Judge Charles Quindry held a hearing on the motion at the State's request on February 11, 1980. Among other allegations in the motion, Barnard accused Vantrease of lying to him. Kyle Vantrease denied any wrongdoing but indicated to the court that he felt he could no longer represent Barnard effectively given Barnard's feelings. Judge Quindry questioned David Barnard at length and repeatedly admonished him regarding his right to appointed counsel, the difficulty of proceeding *pro se*, and the seriousness of the charges. Barnard indicated that he wished to represent himself with the assistance of a court-appointed lawyer, not as his attorney but to do legal research and "second-chair" him. The judge, after telling Barnard that it was not in his best interest to proceed *pro se*, granted the motion and appointed D. Michael Riva, another assistant public defender, to assist the defendant.

The defendant, acting in his *pro se* capacity, filed numerous hand-printed motions between February 13, 1980, and his trial on March 19, 1980. The language of the motions and Barnard's arguments in court were elaborate, sprinkled with legal terminology, repetitive, and often confusing.

On March 10, 1980, the defendant appeared before Judge Robert S. Hill and argued his pretrial motions. The judge ruled on the motions and the matter proceeded to trial nine days later. On March 19, 1980, when David Barnard was brought to court for trial, the judge again questioned his desire to proceed *pro se*. Barnard did not want to go to trial at all, but faced with a denial of a continuance, he elected to continue on his own. The judge gave him time to shave and change clothes, then reconvened to

pick a jury. Michael Riva sat at the counsel table with Barnard and conferred with him several times during the course of the trial. Barnard, however, did all the talking. He cross-examined witnesses and made a brief opening statement. He did not present witnesses or make a closing argument. He took part in a conference on jury instructions and objected to several of the State's instructions. He raised objections during the trial.

After deliberating, the jury found the defendant guilty on all three counts of indecent liberties.

Between the trial and the sentencing hearing on May 12, 1980, Barnard filed several motions including one in arrest of judgment and a "pre-sentence investigation" report of his own. Although again being given the opportunity to be represented by counsel at the sentencing hearing, Barnard chose to continue *pro se*. He argued his post-trial motions and the court treated his "pre-sentence investigation" as written argument in mitigation. Judge Robert Hill sentenced David Barnard to three concurrent terms of 13 years in prison on the three counts. From the judgment of guilty and the sentence, the defendant appeals.

Barnard contends on appeal that the defendant's outbursts at the various proceedings following the preliminary hearing, his refusal to eat prior to arraignment, his attempted and actual waiver of counsel, and the delusional content of the allegations in his motions and arguments to the court, when coupled with both his counsel's and the State's separate request for independent psychiatric evaluations, raised a *bona fide* doubt of the defendant's fitness to stand trial and imposed a duty on the court to hold a fitness hearing on its own motion.

■■■ The law in Illinois is that "[a] defendant is presumed to be fit to stand trial * * *. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—10.) "The issue of the defendant's fitness for trial * * * may be raised by the defense, the State or the Court at any appropriate time * * * before, during, or after trial. When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—11.

■■ In the case before us the defendant's counsel did not raise the question of his fitness for trial even after receiving a report from a psychiatrist who examined the defendant for the purpose of presenting a possible insanity defense. The state's attorney likewise, after receiving the medical report by the defendant's psychiatrist and the report of the psychiatrist appointed by the court on behalf of the State regarding the insanity defense, did not raise the issue of the defendant's fitness to stand trial. The date of the alleged offense was October 28, 1979; the psychiatric

examinations were in January and February, 1980; and the trial was March 19, 1980. Even if the defendant, on October 28, 1979, lacked "a substantial capacity either to appreciate the criminality of [his] conduct or to conform [his] conduct to the requirements of the law as a result of mental disorder or mental defect" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—1—11), it does not necessarily follow that, on March 19, 1980, he was unable to understand the proceedings against him or to assist in his defense. The attorneys in the case were in possession of psychiatric reports regarding the defendant, and they apparently did not feel that a *bona fide* doubt of his fitness existed. Even after the defendant was permitted to waive counsel and proceed *pro se*, he had a lawyer as an assistant who had access to the psychiatric reports. No suggestion was made to the court by the defendant or his assistant that a fitness hearing was desirable.

> "Whether a *bona fide* doubt has been raised is a decision resting largely within the discretion of the trial court. [Citations.] In resolving this issue we bear in mind that the trial court, unlike the reviewing courts, was in a position to observe the defendant and evaluate his conduct." *People v. Murphy* (1978), 72 Ill. 2d 421, 431, 381 N.E.2d 677, 682.

We do not find that the trial court abused its discretion by failing *sua sponte*, to conduct a fitness hearing.

■■ The defendant further asserts that since one judge had determined that he was incapable of waiving his right to counsel and proceeding *pro se*, it was error for another judge to accept his waiver without a fitness hearing. He points out that at the time the waiver was accepted, he had been examined by one psychiatrist and was scheduled for the second examination on the following day. On December 18, 1979, when Judge Lewis refused to grant Barnard's oral request to dismiss his counsel and proceed *pro se*, the judge was aware that the defendant had not eaten for a week. He felt that Barnard was not in any condition *at that time* to make the decision to represent himself. On January 30, 1980, Barnard filed a written motion to dismiss his counsel, accompanied by an affidavit of his reasons. He did not request to go totally *pro se*, but requested that a lawyer be appointed to assist him. The important distinction was that Barnard would be making the strategy decisions. It is clear from the record that Barnard disagreed with his appointed counsel's strategies at several points. He repeatedly requested to be able to represent himself. He was aware of his right to self-representation (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525) and insisted upon exercising it. At the hearing on his motion on February 11, 1980, Judge Quindry repeatedly questioned the defendant about his understanding of the seriousness of the charge, and advised him that the judge did not feel

it was in Barnard's best interests to proceed on his own. He advised the defendant of his right to appointed counsel and offered to appoint other counsel than the lawyer with whom the disagreements had arisen. The judge advised the defendant again of the specific charges against him and the minimum and maximum penalty prescribed by law for them. (Ill. Rev. Stat. 1979, ch. 110A, par. 401(a).) The defendant was adamant in insisting that he wished to represent himself, with the assistance of appointed counsel. Barnard was scheduled for the second psychiatric examination following the hearing on his motion to proceed *pro se*, but this was in connection with a possible insanity plea, not fitness to stand trial or incompetency. The trial court was in a position to observe the defendant and to satisfy himself that Barnard understood what he was doing.

> "In light of the trial court's repeated attempts to insure that defendant received a fair trial and defendant's knowledge and understanding of these proceedings, we hold that the court substantially complied with the requirements of Rule 401." *People v. Black* (1979), 68 Ill. App. 3d 309, 313, 385 N.E.2d 899, 902.

We find no error or denial of due process on the part of the trial court and therefore affirm.

Affirmed.

KASSERMAN, P. J., and KARNS, J., concur.