THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD LILLARD, Defendant-Appellant.

Third District No. 82—677

Opinion filed May 19, 1983.—Rehearing denied June 17, 1983.

---

Robert Agostinelli and Sue Augustus, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

On March 12, 1982, the defendant, Richard Lillard, was charged by indictment with retail theft. (Ill. Rev. Stat. 1981, ch. 38, par. 16A–3(a).) He entered a plea of not guilty and the cause proceeded to a jury trial in the circuit court of Kankakee County on August 11, 1982. The evidence presented during the trial is briefly summarized as there is no issue of reasonable doubt.

The defendant was observed by a salesperson, Lucille Jensen, in the men's department of the Carson Pirie Scott store in Kankakee, Illinois, on the afternoon of March 2, 1982. He told Jensen he wanted to buy a gift. The defendant selected a manicure set and a knife, the approximate value of which was $25. He put the items in his pocket and told Jensen he also wanted to look at some shirts. They walked toward the shirts but the defendant did not stop. He walked out the door. Jensen notified the store manager and a co-worker. She testified that the defendant acted strange and nervous, and that there "probably" was an odor of intoxicating beverages coming from the defendant.

Debbie Cain, the store manager, also observed the defendant in the men's department. She did not see him take the items but saw him walk outside. She said he was not walking correctly and thought

he might be drunk.

Cain told the maintenance man and the department manager to apprehend the defendant. The three people chased him. The defendant threw the items to the ground and escaped. Cain retrieved the items. She also called the police.

The defendant was apprehended by Kankakee police officer Cleveland Thomas about 10 to 15 minutes later. Thomas said the defendant appeared highly intoxicated but was able to respond to questions and to walk.

Following testimony by defense witness, Dr. Erwin Baukus, the defense rested. The jury subsequently returned a verdict of guilty but mentally ill. The defendant was sentenced to a three-year term of imprisonment for retail theft enhanced by a prior theft conviction.

On appeal, the defendant claims he was denied due process of law when he was tried because there was a *bona fide* doubt of his mental fitness which was not resolved by means of a full adversarial hearing before trial. He asks that his conviction be reversed and the cause remanded for a fitness hearing.

During the defendant's arraignment on March 18, 1982, the court questioned the defendant and learned that he had been released from a mental health facility two days before the offense. The court stated that the sheriff was to take some steps to have the defendant examined to determine if he should be recommitted.

The defendant filed a motion for the appointment of expert on April 2, 1982. The motion stated that there was a *bona fide* doubt as to the defendant's fitness to stand trial.

The defendant next appeared in court on April 19, 1982. During that hearing, the trial court stated that it received a letter concerning the defendant's fitness to stand trial. The court said that it was "the considered opinion of the psychiatric community that Richard's all right." Then, the following exchange between the court and the defense counsel occurred:

"THE COURT: No. They took Richard to mental health people because that's where he had been dealing with and the person over there wrote a letter and said Richard was fit to stand trial. If you are not happy with that, we'll have Dr. Baukus look at him.

MR. BARON: That's right. I am not happy with that.

THE COURT: I raised the question on my own."

The court noted the defendant's motion for appointment of expert. Dr. Erwin Baukus, a registered clinical psychologist, was appointed to examine the defendant for fitness to stand trial and insanity.

On May 18, 1982, the defendant's case was called for trial. The defense attorney informed the court that he had not received a written report from Dr. Baukus. The State's Attorney, William Herzog, then asked:

"What issue is this? Fitness or insanity?

MR. BARON: Both.

THE COURT: Both.

MR. HERZOG: Has the bona fide doubt been raised?

THE COURT: I guess I did. Didn't I raise it? Yeah. I raised it initially.

MR. BARON: I think you did, Judge.

THE COURT: There is a bona fide doubt. It has been raised. It is an issue that Dr. Baukus is suppose to give us a report."

The case was then continued in order to await Dr. Baukus' report.

A written report was filed by Dr. Baukus. The doctor diagnosed the defendant as suffering from mixed organic brain syndrome. The defendant had an alcohol dependency and some dependence on a combination of drugs. He also had a diminished intellectual level of functioning. However, Dr. Baukus found the defendant fit to stand trial and that the defendant was not insane at the time he allegedly committed the instant offense.

The defense attorney withdrew a petition to allow election to submit to treatment as an addict on July 14, 1982. The withdrawal was allowed.

The trial commenced on August 11, 1982. The trial court could not find a knowing and intelligent waiver of the right to a jury trial so a jury was sworn. The State presented its evidence and at the close of its case, the defense counsel moved for a mistrial because the defendant was not cooperating with him. In response to this motion, the court asked Dr. Baukus, who was in the courtroom, to come forward.

Dr. Baukus had observed the defendant while he was in the courtroom. The court asked Baukus if this observation made a difference in the earlier report on the defendant's mental condition. Dr. Baukus told the court that the defendant's behavior in the courtroom was similar to his behavior during the first three examinations the doctor conducted on the defendant. During the three examinations, the defendant was not interacting with the doctor. However, in the fourth examination, the defendant said he decided to cooperate and then interacted and talked to the doctor. It was Dr. Baukus' opinion that the defendant was malingering in a creative way, both during the three

interviews and in the courtroom. The court then denied the motion for a mistrial.

The defendant then called Dr. Baukus as an expert witness. He testified that although he believed the defendant suffered from mixed organic brain syndrome at the time of the offense, the defendant was able to appreciate the criminality of an act and able to conform his behavior to the requirements of law.

On cross-examination, Dr. Baukus stated the defendant was sane at the time of the offense and at the time of trial. He said the defendant "malingered" in the first three examinations by the doctor. The doctor said that the defendant was actively faking craziness during the first three interviews.

 A defendant is unfit to stand trial, if because of a mental or physical condition, he is unable to understand the nature and the purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10.) Whether a defendant is fit may be raised by the defense, the State or the court before a plea is entered or before, during, or after trial. When a *bona fide* doubt is raised, the court shall order a determination of the issue before proceeding. Ill. Rev. Stat. 1981, ch. 38, par. 104—11(a).

██ A trial court has discretion in determining whether a *bona fide* doubt as to the defendant's fitness has been raised. (*People v. Barnard* (1981), 95 Ill. App. 3d 1132, 420 N.E.2d 1076.) While the trial court in the instant case stated that there was a *bona fide* doubt regarding the defendant, the issue was resolved prior to the trial. A court-appointed psychologist found the defendant fit to stand trial, as well as being sane at the time of the offense. According to the psychologist, the defendant was able to understand the nature and purpose of the proceedings against him. He was also able to cooperate with his counsel to assist in his defense. Based on this information, the trial court did not abuse its discretion in failing to order a fitness hearing. No *bona fide* doubt existed.

The defense attorney, aware of the mental examination report on the defendant and having personal observation of the defendant, did not request a fitness hearing. Nor did the State's Attorney request a fitness hearing. Since there no longer was a *bona fide* doubt, the trial court did not abuse its discretion by failing *sua sponte* to order a hearing. *People v. Barnard* (1981), 95 Ill. App. 3d 1132, 420 N.E.2d 1076.

██ The fact that the defense counsel moved for a mistrial because the defendant was not cooperating with him is not sufficient to raise a *bona fide* doubt. (*People v. Jackson* (1980), 91 Ill. App. 3d 595,

414 N.E.2d 1175.) The trial court consulted the psychologist who examined the defendant for fitness after the motion was made. The doctor said the defendant was malingering. After observing the defendant throughout the trial and listening to the doctor's opinion, the court denied the motion. No *bona fide* doubt of fitness was raised at this point.

■ The second issue the defendant raised is that his sentence is excessive. Sentencing is within the discretion of the trial court and will not be overruled absent an abuse of that discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Based on the criminal history of the defendant, the need to protect the public, and the medical report that the defendant would benefit from institutionalization to prevent drug abuse, the sentence of three years of imprisonment was proper. There was no abuse of discretion.

Judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.