*In re* DANIEL PRITCHETT (The People of the State of Illinois, Petitioner-Appellee, v. Daniel Pritchett, Respondent-Appellant).

Fourth District   No. 4—85—0866

Opinion filed October 28, 1986.

Roger Derstine and Sandra Kopels, both of Guardianship & Advocacy Center, of Tinley Park, for appellant.

J. William Roberts, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

Respondent appeals from an order directing his hospitalization as a person subject to involuntary admission under section 1—119(1) of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1985, ch. 91½, par. 1—119(1)). On appeal respondent contends that the trial court erred in refusing to strike the testimony of the examining physician for his failure to comply with the statutory requirement that respondent be personally informed of his right to remain silent under section 3—208 of the Code (Ill. Rev. Stat. 1985, ch. 91½, par. 3—208); and the State failed to establish by clear and convincing evidence that respondent was subject to involuntary commitment as required by section 3—808 of the Code (Ill. Rev. Stat. 1985, ch. 91½, par. 3—808). We affirm.

At the hearing before the trial court, Laura Jean Wells testified that she met the respondent approximately five years earlier. The day following the initial meeting, respondent began contacting Wells on an

almost daily basis. He would telephone her, drive by her house, and "lurk" outside the door of her residence. Respondent also maintained a substantial letter-writing campaign to Wells, directing two or three letters to her on a weekly basis over the entire five-year period of time. Although Wells had some difficulty interpreting respondent's letters, they appeared to suggest that respondent was determined to have some sort of relationship with Wells, that her boyfriend had brainwashed her, that respondent would not let her boyfriend stand in his way, and that the boyfriend and the Greene County State's Attorney were possessed by Satan.

Respondent would also enter Wells' property and leave notes written on cardboard in her windows. He would drive to her house, park near the residence and walk to a nearby churchyard, from which he would observe Wells' home. While Wells was attending school in another community, respondent would follow her and leave letters in her car. On several occasions respondent physically confronted Wells in stores, grabbed her by the arms, shook her, and told her to "come to her senses."

Dr. Fenton Drake also testified for the State. He examined respondent on November 6 at St. John's Hospital, two days after respondent's initial examination by another hospital physician. Drake testified that at the examination he conducted, respondent refused to communicate with him and refused medication, which he had been doing since his admission into the hospital. Although Drake stated that he could not make a definitive diagnosis, he believed respondent had an affective psychosis or bipolar illness, probably mania. Drake's opinion was based on a review of the hospital chart, to which previous entries had been made, an examination of the letters written by respondent to Wells, petitions signed by people in the community, and a personal discussion about respondent's condition with the other examining physician. Based on the bizarre content of respondent's communications to Wells, Drake concluded they revealed psychotic and delusional thinking. In addition, respondent's hostile physical contact and harassment of Wells led Drake to the opinion that respondent was afflicted with some sort of mental illness and that respondent could be a danger to himself or could inflict serious harm on someone else.

On cross-examination Drake admitted that he had not explained to respondent his right to remain silent or that any statements he made could be used against him. Drake also testified, however, that respondent refused to talk to him during the course of the limited examination. A subsequent motion to strike Drake's testimony was denied by the trial court.

On appeal respondent contends that the trial court erred in failing to strike Drake's testimony in its entirety because the doctor failed to give him the required admonitions prior to proceeding with the examination. At issue is an interpretation of section 3—208 of the Code, which states:

"Whenever a petition has been executed pursuant to Section 3—507, 3—601 or 3—701, and prior to this examination for the purpose of certification of a person 12 or over, the person conducting this examination shall inform the person being examined in a simple comprehensible manner of the purpose of the examination; that he does not have to talk to the examiner; and that any statements he makes may be disclosed at a court hearing on the issue of whether he is subject to involuntary admission. If the person being examined has not been so informed, the examiner shall not be permitted to testify at any subsequent court hearing concerning the respondent's admission." Ill. Rev. Stat. 1985, ch. 91½, par. 3—208.

Relying on this court's decision in *In re Collins* (1981), 102 Ill. App. 3d 138, 429 N.E.2d 531, respondent contends that the failure to admonish by the doctor requires that Drake's testimony be prohibited, in its entirety, leaving the trial court's findings devoid of supporting medical testimony and therefore against the manifest weight of the evidence. See *In re Rizer* (1980), 87 Ill. App. 3d 795, 409 N.E.2d 383. We disagree.

By enacting section 3—208, the legislature intended to afford individuals subject to involuntary admission proceedings a degree of protection similar to the right against self-incrimination available to a criminal defendant. Moreover, this section not only specifies the right but provides the remedy for its violation by preventing a doctor from testifying as to the respondent's examination and any diagnosis or opinion of defendant's mental condition formed through the use of an individual's statements made during an examination unless that individual was forewarned of the consequences of his decision to speak to an examining physician.

In *Collins* this court held that the testimony of two examining physicians who formed an opinion as to respondent's mental condition from statements he made during the course of two examinations was barred when the doctors failed to admonish respondent of his right to remain silent. Here, in contrast, respondent made no statements to the doctor. In fact, he refused to cooperate with all hospital personnel who sought to treat him. While the doctor utterly failed to inform the respondent of his right to remain silent, it cannot be said that this er-

ror prejudiced respondent since no statement he made was used by the examining physician in forming the opinion on respondent's mental condition which was offered at the hearing.

■ We reject any interpretation of *Collins* which suggests that the simple failure to admonish requires the blanket prohibition of an examining physician's subsequent testimony. We believe the more reasonable interpretation of the statute requires that the doctor's testimony is barred only if the failure to admonish is accompanied by subsequent use of a respondent's statements in forming an opinion on reaching a diagnosis. This result is not inconsistent with *Collins* because, although other evidence was presented at Collins' hearing with respect to his behavior, the doctors there relied solely upon respondent's own statements in arriving at their medical conclusions. Here, the opinion and diagnosis were gleaned entirely from sources independent of the limited examination which Drake conducted. The evidence was properly admitted. *People v. Lang* (1986), 113 Ill. 2d 407, 468-69.

■ Respondent's second contention is that the State failed to prove by clear and convincing evidence that he was a person subject to involuntary commitment. To qualify for involuntary admission, a person must be mentally ill and be reasonably expected to inflict serious harm upon himself or another in the near future because of this mental condition. Ill. Rev. Stat. 1985, ch. 91½, par. 1—119.

Dr. Drake's opinion was based principally upon his examination of the letters sent to Wells by respondent, together with other medical staff observations recorded in respondent's hospital chart, petitions signed by residents in the community which reflected on respondent's behavior, and a consultation with another physician. In Drake's opinion, which was substantiated by Wells' testimony, the letters in question portray a grossly disjointed, disorganized flow of thought, bizarre in nature. Based on respondent's long-term harassment of Wells and the several physical confrontations, the doctor concluded that respondent suffered from a mental illness and that to a reasonable degree of medical certainty respondent could be a danger to himself or inflict serious physical harm upon someone else. While there was no communication between the doctor and respondent, making it more difficult for the doctor to arrive at an opinion, this does not invalidate the opinion that was rendered. *People v. Sharkey* (1978), 60 Ill. App. 3d 257, 376 N.E.2d 464.

Upon review of the entire record, we conclude that the statutory standard embodied in section 1—119 of the Code was established by clear and convincing evidence.

Accordingly, the judgment of the Sangamon County circuit court is affirmed.

Affirmed.

GREEN and SPITZ, JJ., concur.