NOTICE

Decision filed 09/06/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0416

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* DAVID B. | ) | Appeal from the Circuit |
| | ) | Court of Randolph County. |
| (The People of the State of Illinois, Petitioner- | ) | |
| Appellee, v. David B., Respondent-Appellant). | ) | No. 05-MH-142 |
| | ) | |
| | ) | Honorable Richard A. Brown, |
| | ) | Judge, presiding. |

_____

JUSTICE McGLYNN delivered the opinion of the court:

David B. appeals an order of the circuit court of Randolph County entered on June 22, 2005, finding him to be a person subject to involuntary admission and ordering his continued hospitalization at the Chester Mental Health Center. Respondent filed a timely *pro se* notice of appeal on July 20, 2005. His appointed counsel filed an amended notice of appeal on August 15, 2005, in accordance with Supreme Court Rule 303(b)(4) (Official Reports Advance Sheet No. 7 (March 30, 2005), R. 303(b)(4), eff. March 18, 2005). On appeal, respondent argues the trial court's judgment should be reversed because (1) the State did not meet the statutory requirements for his involuntary admission in that it failed to produce at least one expert to testify at his involuntary admission hearing who had recently performed a personal examination on him and (2) the trial court's judgment was against the manifest weight of the evidence. We affirm.

## I. Statement of Facts

### A. Background

In 1981, respondent, David B., was convicted of three counts of indecent liberties with

1

a child. This court affirmed his appeal in that case. *People v. David B.,*[1] 95 Ill. App. 3d 1132, 420 N.E.2d 1076 (1981). Respondent was sentenced to 13 years' imprisonment on each count, with the sentences to run concurrently.

On May 9, 1986, a petition for respondent's involuntary admission for hospitalization in the Department of Mental Health and Developmental Disabilities (Department of Mental Health) and the certificates of a psychologist and psychiatrist were filed in the circuit court of Randolph County. On May 21, 1986, after serving 6 years and 6½ months of his 13-year sentence, respondent filed a "Petition for Judicial Discharge" with the circuit court. On the same day, a "Parole or Mandatory Supervised Release Agreement" was filed. It stated that as a condition of respondent's mandatory supervised release, he would be committed to the Department of Mental Health for retention and treatment. A timely hearing on the petitions was conducted, and a licensed psychologist testified that he had interviewed respondent, reviewed his medical files, reviewed letters written by respondent, and spoken with his therapist. Based on this information, the psychologist opined that at times respondent becomes paranoid, which he projects at others, and becomes grossly psychotic. Respondent continues to have sexual difficulty, which could have him act out against children in the future. Respondent also believes that he can pick up other people's thoughts and predict future disasters. Respondent has written threatening letters to those who were involved in

---

[1]Throughout this opinion, the titles of cases have been modified to comply with Supreme Court Rule 330 (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 330, eff. October 1, 2001).

gathering or giving evidence that resulted in his conviction. The psychologist diagnosed David B. as suffering from a schizoaffective disorder and a paranoid personality disorder and concluded that at the time of the hearing he would be a danger to himself and to others if released. This court affirmed the trial court's finding that David B. was still in need of treatment and subject to involuntary admission. *People v. David B.*, No. 5-86-0369 (1986) (unpublished order under Supreme Court Rule 23 (87 Ill. 2d R. 23)).

To this day respondent remains at Chester Mental Health Center. Prior to 2005, a review of his confinement has come before this court at least 28 times, and each time this court has affirmed respondent's involuntary confinement.[2] In the vast majority of these appeals, this court has noted trial evidence bearing on respondent's consistent refusal to accept any treatment[3] or medication,[4] his consistent refusal to deal with his sexual

---

[2]This court has issued opinions in *People v. David B.*, 95 Ill. App. 3d 1132, 420 N.E.2d 1076 (1981), and *In re David B.*, 247 Ill. App. 3d 234, 616 N.E.2d 714 (1993). And the court has issued unpublished Rule 23 orders in these cases: Nos. 5-86-0369 (1986), 5-86-0588 (1987), 5-86-0837 (1987), 5-87-0459 (1988), 5-87-0582 (1988), 5-88-0025 (1988), 5-88-0421 (1988), 5-89-0857 (1991), 5-90-0728 (1992), 5-91-0066 (1992), 5-92-0699 (1993), 5-92-0252 (1993), 5-93-0078 (1993), 5-93-0215 (1993), 5-93-0697 (1995), 5-94-0230 (1995), 5-94-0684 (1995), 5-94-0710 (1995), 5-95-0427 (1995), 5-95-0837 (1996), 5-95-0924 (1996), 5-96-0446 (1997), 5-98-0514 (1999), 5-00-0034 (2001), 5-00-0035 (2001), and 5-00-0412 (2001).

[3]*People v. David B.*, No. 5-87-0459, order at 2 (1988) (unpublished Rule 23 order) ("[R]espondent has failed to cooperate with his treatment team"); *People v. David B.*, No. 5-

88-0025, order at 2-3 (1988) (unpublished Rule 23 order) ("[R]espondent refuses to interact with anyone at the hospital ***"); *In re David B.*, No. 5-91-0066, order at 2 (1992) (unpublished Rule 23 order) ("[Respondent] has refused most forms of treatment offered[,] claiming he does not need it"); *In re David B.*, 247 Ill. App. 3d 234, 239-40, 616 N.E.2d 714, 719 (1993) ("[R]espondent will not get involved in anything except for typing legal documents. While respondent is now seeing a therapist, he does not want to deal with the issue of his sexual offense or his borderline personality disorder and refuses any other means of treatment"); *In re David B.*, No. 5-92-0699, order at 3-4 (1993) (unpublished Rule 23 order) ("If respondent would agree to cooperate with treatment, he could eventually be reintegrated into society"; "[respondent] has refused all types of treatment"); *In re David B.*, No. 5-92-0252, order at 3 (1993) (unpublished Rule 23 order) ("[Respondent] has refused any and all treatment"); *In re David B.*, No. 5-93-0078, order at 3 (1993) (unpublished Rule 23 order) ("[Respondent] admitted that he was not cooperating with any treatment plans ***"); *In re David B.*, No. 5-93-0215, order at 5 (1993) (unpublished Rule 23 order) ("Respondent has 'done absolutely nothing' to cooperate with the treatment programs offered at Chester"); *In re David B.*, No. 5-94-0230, order at 3 (1995) (unpublished Rule 23 order) ("Respondent refuses to participate in any of the Department's programs, with the exception of ceramics ***"); *David B. v. State*, No. 5-95-0427, order at 2, 4 (1995) (unpublished Rule 23 order) ("[Respondent] refuses to cooperate in any treatment programs"; "[he] denied his problems[] [and] would not accept treatment"); *In re David B.*, No. 5-95-0837, order at 2-3 (1996) (unpublished Rule 23 order) ("[Respondent] does not participate in any type of treatment program"); *In re David B.*, No. 5-95-0924, order at 2 (1996) (unpublished Rule 23 order) ("[R]espondent, having no insight into his problems, has refused treatment"); *In re David B.*, No. 5-00-0034, order at 2 (2001) (unpublished Rule 23 order) ("[Respondent] has

4

problems,[5] and his continued refusal to participate in mental examinations.[6]

made no effort to discuss the issues that brought him to the mental health center"); *In re David B.*, No. 5-00-0035, order at 4 (2001) (unpublished Rule 23 order) ("[Respondent] had refused to address the issue of his preoccupation with sexual gratification involving minor females[,] *** used defiant means to thwart any therapeutic interventions ***, and refused conventional treatment for pedophilia").

[4]*People v. David B.*, No. 5-86-0588, order at 2 (1987) (unpublished Rule 23 order) ("Petitioner had not taken medication ***"); *In re David B.*, 247 Ill. App. 3d 234, 241, 616 N.E.2d 714, 720 (1993) ("[R]espondent has refused all medication"); *In re David B.*, No. 5-92-0252, order at 4 (1993) (unpublished Rule 23 order) ("Respondent has refused individual therapy, GED classes, and medication"); *In re David B.*, No. 5-94-0230, order at 3 (1995) (unpublished Rule 23 order) ("[Respondent] refuses all medication"); *In re David B.*, No. 5-98-0514, order at 3 (1999) (unpublished Rule 23 order) ("Although respondent has taken antianxiety and antidepressant medication, he refuses the kind of medication recommended by his psychiatrist for the treatment of his other problems, because respondent does not feel that pedophilia can be treated"); *In re David B.*, No. 5-00-0034, order at 2 (2001) (unpublished Rule 23 order) ("He refuses medication for his pedophilia ***").

[5]*People v. David B.*, No. 5-86-0588, order at 2 (1987) (unpublished Rule 23 order) ("Petitioner has a preoccupation with young girls and has sexually abused his sister, his cousins, and his step[]daughter. *** [I]f petitioner were released, he would become involved again with a prepubescent child"); *In re David B.*, 247 Ill. App. 3d 234, 240, 616 N.E.2d 714, 719 (1993) ("[H]e does not want to deal with the issue of his sexual offenses ***"); *In re David B.*, No. 5-92-0699, order at 4 (1993) (unpublished Rule 23 order) ("Respondent has

attempted to treat himself by masturbating to pictures of young children taken from magazines or drawing his own pictures of children for the same purpose"); *In re David B.*, No. 5-92-0252, order at 5 (1993) (unpublished Rule 23 order) ("Respondent denied that he suffers from pedophilia as he 'would just as soon have adult women as young girls' "); *In re David B.*, No. 5-93-0078, order at 2 (1993) (unpublished Rule 23 order) ("Petitioner maintains that there is a distinct difference between child molesters that have psychopathic personalities and pedophiles, which care for their victims. By petitioner's definition, he is a pedophile"); *In re David B.*, No. 5-93-0215, order at 5-6 (1993) (unpublished Rule 23 order) ("If not hospitalized, respondent will stalk and hurt kids"); *In re David B.*, No. 5-94-0684, order at 7 (1995) (unpublished Rule 23 order) ("Petitioner believes that he is entitled to participate in acts of pedophilia and would commit acts of pedophilia if given the opportunity ***"); *In re David B.*, No. 5-98-0514, order at 3 (1999) (unpublished Rule 23 order) ("[R]espondent does not believe that pedophilia can be treated"); *In re David B.*, No. 5-00-0034, order at 2 (2001) (unpublished Rule 23 order) ("[Respondent] has made no effort to discuss the issues that brought him to the mental health center. He *** states that he can treat his abnormally high sex drive by eating peas"); *In re David B.*, No. 5-00-0035, order at 4 (2001) (unpublished Rule 23 order) ("[Respondent] refused conventional treatment for pedophilia").

[6]*People v. David B.*, No. 5-87-0459, order at 2 (1988) (unpublished Rule 23 order) ("[A] clinical psychologist *** attempted to interview respondent, but he refused to speak ***"); *People v. David B.*, No. 5-87-0582, order at 2 (1988) (unpublished Rule 23 order) ("[A] clinical psychologist *** testified that he attempted to interview petitioner on the day prior to the hearing, but he declined to be interviewed"); *People v. David B.*, No. 5-88-0025, order at 2 (1988) (unpublished Rule 23 order) ("[A] psychologist *** testified he attempted

6

to see respondent \*\*\* but respondent refused to speak with him \*\*\*"); *In re David B.*, 247 Ill. App. 3d 234, 239, 616 N.E.2d 714, 719 (1993) ("[The examiner] testified that he attempted to examine respondent \*\*\* but respondent chose not to speak with him"); *In re David B.*, No. 5-92-0252, order at 4 (1993) (unpublished Rule 23 order) ("Respondent admitted that he refused to be examined \*\*\*"); *In re David B.*, No. 5-94-0230, order at 3, 5 (1995) (unpublished Rule 23 order) ("[The examiner] made two attempts to examine respondent in the 10 days preceding the hearing, but respondent refused to speak with him," and "[r]espondent testified \*\*\* that he does not participate in therapy because whatever he says in the sessions are [*sic*] used against him in court \*\*\*"); *In re David B.*, No. 5-94-0684, order at 2 (1995) (unpublished Rule 23 order) ("[P]etitioner refused to be interviewed \*\*\* the day prior to the hearing \*\*\*"); *In re David B.*, No. 5-98-0514, order at 2 (1999) (unpublished Rule 23 order) ("[R]espondent had refused to be interviewed for the hearing"); *In re David B.*, No. 5-00-0034, order at 1-2 (2001) (unpublished Rule 23 order) ("[Respondent] had refused to speak with [the examiner], but [the examiner] had reviewed [respondent's] clinical file and had spoken with members of [respondent's] treatment team").

## B. June 22, 2005, Hearing

Carole Metzger, a licensed clinical social worker employed by Chester Mental Health Center, was charged with examining respondent for the purpose of testifying as the State's expert witness at the hearing on respondent's continued involuntary admission. At the hearing, Metzger testified that respondent simply refused to speak with her when she attempted to personally examine him. Although she was successful in examining him in 2002, Metzger testified that respondent's lack of cooperation was a consistent pattern of refusals to talk with his therapist or anyone else about his pedophilic behavior. Metzger also testified that respondent had told her he refused to speak with her because she would testify at the next hearing regarding his involuntary confinement.

Metzger further testified about respondent's long history of diagnosed mental illness. Respondent had been committed at Chester Mental Health Center since 1986 but also had been admitted at the Zeller Mental Health Institution in 1973. According to his medical records, respondent has a delusional disorder, has a personality disorder of paranoia, and is a pedophile. He also has a history of persecutory delusions with projections of blame and suspiciousness. He has written threatening letters to officials at the Department of Children and Family Services and the State's Attorney's office. He has a history of sexually inappropriate expression with pedophilia and a preoccupation with sadomasochistic sexual fantasies. Metzger attributed his current lack of violent outbreaks and aggressiveness to the structured environment of the mental health center. She believed that without this environment he would cease taking his medication and would be a threat to himself and to others. Metzger also testified she did not believe that respondent would be able to take care of himself if released.

Respondent testified on his own behalf at the hearing, stating that the reason he refused to speak with Metzger was that he had been sleeping and had not been totally

8

oriented. He also stated that his only illness was depression and that he thought he could take care of himself if released. Respondent failed to contradict the State's case, except to deny that he was a pedophile. We also note that respondent never objected to Metzger's testimony, nor did he move to dismiss the State's petition on the ground that an expert had not recently examined him.

## II. Analysis

Respondent now appeals the latest order for involuntary admission, arguing that the State failed to have him examined pursuant the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-807 (West 2000)), despite his continuing failure to cooperate or participate with mental examinations. David B. further argues that the order of confinement was against the manifest weight of the evidence. We disagree on both counts and affirm the order of confinement.

## A. Examination Required Under Statute

In his first point, respondent argues the order of confinement must be reversed because the State's expert failed to examine him in a manner consistent with the requirements of section 3-807 of the Code (405 ILCS 5/3-807 (West 2000)). Pursuant to section 3-807:

"No respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. The respondent may waive the requirement of the testimony subject to the approval of the court." 405 ILCS 5/3-807 (West 2000).

Respondent argues that the order of confinement must be reversed because there must be a personal interview prior to the hearing, before an expert can be deemed qualified to testify about the committed's condition. We disagree. While we are mindful of the fundamental liberties at issue and that certain due process protections must be afforded so that these fundamental rights are not trampled in the rush to protect society at the expense of the

9

individual, the question remains whether we can allow a sexually dangerous person who has become familiar with the law through numerous appeals to gain freedom by simply refusing to speak with the State's expert. Put simply, the answer is no; the statutory language requiring an evaluation from a competent expert was not intended to create a loophole for a sexually dangerous person to exploit.

The supreme court has allowed a doctor to testify about an involuntarily committed person based entirely on a review of the patient's records, discussions with staff members, and prior observations of the respondent. *People v. Lang*, 113 Ill. 2d 407, 468-69, 498 N.E.2d 1105, 1133 (1986) ("[W]e do not construe section 3-208 [of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3-208)] as barring an examiner's testimony if it is derived from other sources. Here, respondent refused to communicate with Dr. Ney for any reason, and the doctor's testimony was based entirely on his review of the records, discussions with Chicago-Read staff members, and his prior observations of respondent. As such, his testimony was properly allowed by the circuit court"). This court has allowed the same. *In re David B.*, 247 Ill. App. 3d 234, 239, 616 N.E.2d 714, 719 (1993). Relying on *Lang*, the court in *In re Pritchett*, 148 Ill. App. 3d 746, 749-50, 499 N.E.2d 1029, 1031-32 (1986), held that a doctor may testify at a respondent's hearing for involuntary admission and base his or her testimony upon the observations of the respondent's condition when the respondent refuses an examination and when the doctor fails to inform the respondent of his right to remain silent under section 3-208, since no statement the respondent made was used by the examining physician in forming the opinion on the respondent's mental condition that was offered at the hearing.

Recently, the supreme court found that even though an examiner had been unsuccessful in an attempt to interview the respondent the day before the hearing, it was sufficient for the examiner to testify under section 3-807 when the examiner was directly

involved in the respondent's care, was a consultant in the respondent's treatment team, and met with the respondent in a group session within three days of the hearing. *In re Michelle J.*, 209 Ill. 2d 428, 439, 808 N.E.2d 987, 993 (2004).

Respondent also cites *In re Michelle J.*, a consolidated appeal in which the supreme court found that although it was appropriate for Michelle's clinical psychologist to testify for the reasons stated above, Sam's involuntary admission could not be extended based on the testimony of a psychologist who had not examined the patient. *In re Michelle J.*, 209 Ill. 2d 428, 808 N.E.2d 987. Although neither expert had personally interviewed the patients, their competency to testify was due to the level of involvement with the individual respondents. *In re Michelle J.*, 209 Ill. 2d at 438-39, 808 N.E.2d at 992-93. Sam's psychologist was " 'not directly involved in his treatment' " and had " 'never been directly involved in his treatment.' " *In re Michelle J.*, 209 Ill. 2d at 431, 808 N.E.2d at 989. "In contrast to *** Sam's case, however, [Michelle's psychologist] did have personal knowledge of Michelle's condition. [She] knew Michelle, interacted with her during a group session conducted three days earlier, and served as a consultant to her treatment team." *In re Michelle J.*, 209 Ill. 2d at 433, 808 N.E.2d at 989-90. The reason there had been no interview with Sam was that the patient "was restrained and not in a position to be interviewed when [the psychologist's] schedule allowed her to travel there to see him." *In re Michelle J.*, 209 Ill. 2d at 436, 808 N.E.2d at 991. The reason there had been no interview with Michelle was that the psychologist believed that Michelle was unable to make an informed decision concerning her rights, due to her "deteriorated clinical condition." *In re Michelle J.*, 336 Ill. App. 3d 1026, 1028, 785 N.E.2d 133, 135 (2003), *aff'd in part & rev'd in part*, 209 Ill. 2d 428, 808 N.E.2d 987 (2004).

In *In re Barbara H.*, 183 Ill. 2d 482, 702 N.E.2d 555 (1998), the supreme court held that because the expert had not personally examined the respondent in connection with that

case and the respondent's situation at that time, the requirements of section 3-807 had not been satisfied. The supreme court likened the facts surrounding Barbara H. to the facts surrounding Sam in *In re Michelle J.*, 209 Ill. 2d at 435-36, 808 N.E.2d at 990-91. Neither had been interviewed by an expert.

Given the holdings in the latter cases, what does constitute an appropriate examination under section 3-807 is the subject of some debate. See *In re Michelle J.*, 209 Ill. 2d at 439, 808 N.E.2d at 993 (Thomas, J., specially concurring). Much has been made with respect to the language in *In re Barbara H.* that holds that a case for involuntary admission cannot be entirely predicated on the testimony of a physician who has not personally examined the individual sought to be committed. *In re Barbara H.*, 183 Ill. 2d at 497, 702 N.E.2d 562. Respondent asks this court to read that language so broadly that it renders insufficient the evidence adduced against him and requires his release. We do not read *In re Barbara H.* so broadly, nor do we believe that it mandates the release of respondent here.

The individual in *In re Barbara H.* was a woman who was alleged to be mentally ill and unable to care for her basic physical needs. *In re Barbara H.*, 183 Ill. 2d at 486, 702 N.E.2d at 557. The State sought to have her involuntarily confined, and it administered psychotropic drugs against her wishes. *In re Barbara H.*, 183 Ill. 2d at 487, 702 N.E.2d at 557. There was no evidence that Barbara H. posed any risk of harm to others or that she had participated in such proceedings previously. Moreover, during the hearing in question, a public defender, who, it turned out, had never been appointed to represent her, waived Barbara H.'s rights to be present during the hearing. *In re Barbara H.*, 183 Ill. 2d at 494-95, 702 N.E.2d at 561. The supreme court found that the lower court had "allowed [her] rights to be surrendered by a stranger," and the supreme court stated, "Her statutory right to counsel *** was reduced to no more than an empty formality." *In re Barbara H.*, 183 Ill. 2d at 496, 702 N.E.2d at 561.

12

The procedural infirmities that plagued the hearing in *In re Barbara H.* do not remotely resemble the reasonable proceeding afforded David B. Moreover, while Barbara H. appeared to be a person wrestling with a mental disorder, there was no evidence that she was purposefully uncooperative. Nor does the record reflect she was a veteran of such court proceedings, as indeed David B. has become. The record reflected a concern by the State that while Barbara H. might have been a threat to only herself, the concern surrounding David B. is his disturbing predatory actions toward children and his long history of refusing to address the threat he continues to pose to others. In examining the facts of *In re Barbara H.*, one cannot conclude that the supreme court intended to create a loophole for a pedophile to exploit when it insisted that Barbara H. be provided a hearing that was fair and procedural due process that was meaningful and not hollow.

In *In re Barbara H.*, the supreme court did not reach the question of the effect of a conscious decision by the patient not to talk in order to escape involuntary confinement or otherwise to frustrate an effort by the State to maintain confinement. A reviewing court opinion is a precedent only for what is actually decided, and it is not a precedent for issues that could have been decided but were not. *Bergin v. Board of Trustees of the Teachers' Retirement System*, 31 Ill. 2d 566, 574-75, 202 N.E.2d 489, 494 (1964); *Save the Prairie Society v. Greene Development Group, Inc.*, 338 Ill. App. 3d 800, 803, 789 N.E.2d 389, 392 (2003); *Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority*, 334 Ill. App. 3d 960, 968 n.1, 779 N.E.2d 259, 266 n.1 (2002).

The court in *In re Collins*, 102 Ill. App. 3d 138, 148, 429 N.E.2d 531, 539 (1981), expressed "severe reservations as to the efficacy of the statutory scheme provided in the present Mental Health and Developmental Disabilities Code." The court described situations meriting "special attention," including the following one:

"[T]here is the situation in which the mentally ill person 'understands' his rights

13

and still refuses to talk to physicians. If he can avoid making any statements to the doctor [citation], then the attending physicians will have to look solely to outside sources or rely on nonverbal conduct of the respondent to arrive at a diagnosis, thereby making the diagnostic process much more difficult." *In re Collins*, 102 Ill. App. 3d at 146-47, 429 N.E.2d at 538.

This case is one of those situations. We find guidance in *Allen v. Illinois*, where the United States Supreme Court affirmed the Illinois Supreme Court's finding that proceedings under the Illinois Sexually Dangerous Persons Act (Ill. Rev. Stat. 1985, ch. 38, par. 105-1.01 *et seq.*) were not "criminal" within the meaning of the fifth amendment's guarantee against compulsory self-incrimination. *Allen v. Illinois*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986). Specifically, the Supreme Court noted with approval the observations of the Illinois Supreme Court when it found, "[T]he State's interest in treating, and protecting the public from, sexually dangerous persons would be 'almost totally thwarted' by allowing those persons to refuse to answer questions posed in psychiatric interviews ***." *Allen*, 478 U.S. at 367, 92 L. Ed. 2d at 303, 106 S. Ct. at 2991.

The same logic applies here, given that section 3-208 of the Code provides that a respondent has an absolute right to refuse to talk to an examiner, that the examiner must inform the respondent of that right, and that the examiner may not testify at a hearing if the respondent has not been notified of that right. 405 ILCS 5/3-208 (West 2002). Section 3-807 of the Code provides that no respondent may be found subject to involuntary admission unless an expert who has examined that respondent testifies in person at the hearing. 405 ILCS 5/3-807 (West 2002). It would be an absurd result to allow a dangerous pedophile, who has become sophisticated in litigation through long experience with commitment proceedings, to free himself by simply refusing to discuss his pedophilia with anyone defined in the statute as competent to testify at a commitment proceeding. The clinical psychologist

14

who interviewed David B. testified that the reason he did not want the interview was that she would testify in court. The judge, as a trier of fact, was entitled to believe the expert rather than the committed person. *In re Carmody*, 274 Ill. App. 3d 46, 50, 653 N.E.2d 977, 981 (1995). By extending the statutory requirement that "at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing" (405 ILCS 5/3-807 (West 2000)) to one where the qualified examiner must have personally interviewed the respondent immediately prior to the hearing, we would set the stage for an abuse of the Code the legislature surely did not intend.

We hold that section 3-807 of the Code requires the examiner to attempt a personal interview but that if the respondent refuses or is intentionally uncooperative, then the statutory examination may be based on discussions with treating staff and a review of medical records.

### B. Against the Manifest Weight of the Evidence

Respondent's second argument is that the trial court's ruling should be reversed because it was against the manifest weight of the evidence.

A person may be found subject to involuntary admission only where it is proven by clear and convincing evidence that he meets the statutory criteria. 405 ILCS 5/3-808 (West 2004). In order to establish that a person is in need of mental treatment, the State must first prove that the respondent is suffering from a mental disorder; in addition, the State must also produce an explicit medical opinion concluding that as a direct result of mental illness a person is unable to care for himself or is potentially dangerous to himself or others. *In re Whitehouse*, 56 Ill. App. 3d 245, 249, 371 N.E.2d 990, 993 (1977). Absent clear and convincing evidence, the petition must be dismissed and the respondent discharged. 405 ILCS 5/3-809 (West 2004).

For purposes of an involuntary commitment proceeding, it is proper for an expert

witness to examine a respondent's complete psychiatric history in forming his opinion concerning the respondent's current and future dangerousness. *In re Robert H.*, 302 Ill. App. 3d 980, 707 N.E.2d 264 (1999). As noted above, respondent has a long-documented psychiatric history. In *In re David B.*, 247 Ill. App. 3d 234, 256-57, 616 N.E.2d 714, 730 (1993), this court found that the evidence in respondent's involuntary admission proceeding supported the examining doctors' assessment that there was a reasonable expectation that David B. might engage in dangerous conduct if he were to be released. An expert testified that David B. was suffering from mental illness, pedophilia, and other personality disorders which affected his insight and judgment and that, therefore, he was a danger to himself and to others. This court also found that David B. failed to cooperate in psychotherapy and medication treatment. The assessment of the doctors that David B.'s impaired judgment and inability to control his behavior caused him to be a danger to himself and others was corroborated by David B.'s drawing, in explicit detail, a female child with genitalia and his testimony indicating a preoccupation with naked female children and his inability to recognize that he has a problem in this regard.

A review of the record and our previous orders leads us to conclude that the State met its burden of proving clearly and convincingly that David B. is subject to continued involuntary confinement. Respondent argues to the contrary, citing the facts that little evidence was presented by the State during the hearing at issue and that no evidence was presented to support the conclusion that David B. even has a mental illness. Further, respondent argues that no evidence was presented to show that respondent was reasonably expected to inflict serious physical injury upon himself or another in the near future.

This court has found that respondent suffers from mental illness and is a pedophile, not just in one published opinion but in numerous unpublished orders under Supreme Court Rule 23. Although Rule 23 orders are not precedential, they may be cited for contentions

16

such as *res judicata*, collateral estoppel, and the law of the case. 166 Ill. 2d R. 23(e). A final judgment between the same parties is binding in later litigation under the rule of *res judicata* for all the issues decided and is binding under the rule of collateral estoppel for all the findings of fact. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635, 826 N.E.2d 449, 455-56 (2005); *Bickel v. Subway Development of Chicagoland, Inc.*, 354 Ill. App. 3d 1090, 1102, 822 N.E.2d 469, 479 (2004). Respondent has been convicted of sexually abusing little girls (*People v. David B.*, 95 Ill. App. 3d 1132, 420 N.E.2d 1076 (1981)), and we have upheld numerous findings that he is a dangerous pedophile who would in all probability prey on young children if released (*In re David B.*, 247 Ill. App. 3d 234, 616 N.E.2d 714 (1993); *People v. David B.*, No. 5-86-0588 (1987) (unpublished Rule 23 order); *In re David B.*, No. 5-94-0230 (1995) (unpublished Rule 23 order); *David B. v. State*, No. 5-95-0427 (1995) (unpublished Rule 23 order); *In re David B.*, No. 5-95-0837 (1996) (unpublished Rule 23 order)). Additionally, for nearly every hearing over the past 20 years we have found that David B. refuses to accept treatment for his sexual problem and denies that his pedophilia is a problem. See slip op. at 3-7, nn.3, 4, 5, & 6.

We find that it was not against the manifest weight of the evidence for the court to find that David B. has a mental disorder and, if released, would be a threat to himself and to others. Metzger testified she was familiar with respondent's case, had consulted with other experts familiar with respondent's case, and had reviewed respondent's records in preparation for the involuntary confinement hearing. Metzger testified that respondent suffered not only from pedophilia but also from paranoia, delusional disorder, and sadomasochistic sexual fantasies. His paranoia manifested itself in persecutory delusions, projections of blame, suspiciousness, and threats to persons of authority. She came to the conclusion there has been no change in his circumstances to warrant his release.

Our examination of the entire record and previous orders reveals that David B.

continuously refuses all treatment with regard to his condition. It was not against the manifest weight of the evidence for the trial judge to conclude, given the testimony, that a convicted pedophile who continues to refuse treatment would continue to be a threat to himself or to others.

## III. Conclusion

The judgment of the lower court is affirmed.

Affirmed.

WELCH and DONOVAN, JJ., concur.

NO. 5-05-0416

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* DAVID B. | ) | Appeal from the Circuit |
| | ) | Court of Randolph County. |
| (The People of the State of Illinois, Petitioner- | ) | |
| Appellee, v. David B., Respondent-Appellant). | ) | No. 05-MH-142 |
| | ) | |
| | ) | Honorable Richard A. Brown, |
| | ) | Judge, presiding. |

**Opinion Filed**:     September 6, 2006

**Justices**:     Honorable Stephen P. McGlynn, J.

Honorable Thomas M. Welch, J.
Honorable James K. Donovan, J.
Concur

**Attorneys**
**for**
**Appellant**

Anthony E. Rothert, Staff Attorney, Legal Advocacy Service, Guardianship and
Advocacy Commission, Metro East Regional Office, 4500 College Avenue,
Suite 100, Alton, IL 62002

**Attorneys**
**for**
**Appellee**

Hon. Randall Rodewald, State's Attorney, Randolph County Courthouse, Chester,
IL 62233; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Kevin
D. Sweeney, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor,
730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864